[L. A. No. 25786. In Bank. May 10, 1960.]

GENERAL MOTORS ACCEPTANCE CORPORATION (a Corporation), Appellant, v. RONALD M. KYLE, Respondent.

Getz, Aikens & Manning and Harold T. Tredway for Appellant.

Arkin & Weissman and Stuart N. Arkin for Respondent.

SCHAUER, J.—Plaintiff General Motors Acceptance Corporation (hereinafter called GMAC) appeals from a judgment for defendant Kyle in the sum of $2,643, the value of an

automobile, on Kyle's counterclaim in GMAC's action for specific recovery of the vehicle or its market value. Kyle was the defaulting purchaser of the automobile under a contract of conditional sale with Milliken Chevrolet, Inc. Such contract did not comply with the requirements of subdivision (a) of section 2982 of the Civil Code.[1] The seller assigned the conditional sale contract to GMAC. Disposition of GMAC's appeal turns upon the legislative purpose in regulating conditional sales of motor vehicles by section 2982. ▇▇▇ As we said when we first considered subdivision (a) of the section in *Carter* v. *Seaboard Finance Co.* (1949), 33 Cal.2d 564, 573

[1]The pertinent requirements of subdivision (a) of section 2982 read as follows:

"Every conditional sale contract for the sale of a motor vehicle . . . shall be in writing and shall contain all of the agreements between the buyer and the seller relating to the personal property described therein. It shall be signed by the buyer or his authorized representative and by the seller or its authorized representative, and when so executed an exact copy thereof shall be delivered by the seller to the buyer at the time of its execution. It shall recite the following separate items as such, in the following order:

"1. The cash price of the personal property described in the conditional sale contract. ["Cash price" is defined (by Civ. Code, § 2981, subd. (e)) as "the amount for which the seller would sell . . . to the buyer unqualified title to the personal property described in the conditional sale contract, if such property were sold for cash at the seller's place of business on the date such contract is executed . . ."]

"2. The amount of the buyer's down payment, and whether made in cash or represented by the net agreed value of described property traded in, or both, together with a statement of the respective amounts credited for cash and for such property. . . .

"3. The amount unpaid on the cash price, which is the difference between Items 1 and 2.

"4. The cost to the buyer of any insurance, the premium for which is included in the contract balance.

"5. A description and itemization of amounts, if any, which will actually be paid by the seller or his assignee to any public officer as fees in connection with the transaction, which are included in the contract balance.

"6. The amount of the unpaid balance, which is the sum of Items 3, 4, and 5.

"7. The amount of the time price differential. ["Time price differential" is defined (by Civ. Code, § 2981, subd. (h)) as "any amount which the buyer agrees to pay to the seller in excess of the unpaid balance."]

"8. The contract balance owed by the buyer to the seller, which is the sum of Items 6 and 7.

"9. The number of installments required to pay the contract balance, the amount of each installment, and the date for payment of the installments."

The just quoted provisions have been included in section 2982 from its original enactment (Stats. 1945, ch. 1030, p. 1991) through its subsequent amendments (Stats. 1949, ch. 1594, p. 2842; Stats. 1951, ch. 342, p. 776; Stats. 1957, ch. 613, p. 1822; Stats. 1959, ch. 1466, p. 3762).

[203 P.2d 758], its "obvious purpose" is "to protect purchasers of motor vehicles against excessive charges by requiring full disclosure of all items of cost." As shown by subsequent decisions hereinafter discussed, such subdivision (a) is not intended to penalize the seller who violates it in the respects here concerned, or the assignee of such a seller, nor should such subdivision (a) be applied in a manner which will give a windfall to the conditional purchaser. This view of section 2982 leads to the conclusion that the judgment should be reversed with directions to permit Kyle, if he be so advised, to amend his counterclaim and seek recovery upon a restitutive rather than a punitive theory.

On December 21, 1956, Kyle and Milliken executed the conditional sale contract. The transaction violated subdivision (a) of section 2982 of the Civil Code, *supra*, footnote 1, in the following respects: The copy delivered to Kyle was not signed by an authorized representative of the corporate seller; the recited cash down payment was $787.47, but the actual cash down payment to Milliken was $285; the contract did not recite a "description and itemization of amounts . . . which will actually be paid by the seller . . .to any public officer as fees in connection with the transaction, which are included in the contract balance," but rather stated, "FEES PAID: Registration and Transfer $_____, Other $_____ $54.00."

On an undisclosed date, by a writing which is not in evidence, Milliken assigned the conditional sale contract to GMAC. Kyle paid GMAC two monthly instalments pursuant to the contract, then defaulted. On April 30, 1957, Kyle's attorney wrote Milliken and GMAC that the contract is "void" because of specified violations of section 2982; that Kyle "tendered this automobile back to Milliken Chevrolet several months ago and . . . tender was refused"; and that Kyle therefore would make no more payments and would not permit repossession of the car.

GMAC brought this action to recover the vehicle or its reasonable value and damages for its detention, obtained possession of the car (through the municipal court marshal) by the provisional remedy of claim and delivery, and sold it to a third person. Kyle answered and counterclaimed for damages "because of the repossession of said automobile."

The trial court determined that because of the above stated violations of section 2982 the conditional sale contract was "void" and GMAC "had no rights thereunder and had no right to repossess said automobile by means of this action, or

otherwise''; that Kyle had "the right to possession" of the automobile. The court awarded Kyle $2,643, the stipulated value of the car at the time GMAC obtained possession of it by the claim and delivery remedy. That the trial court was of the opinion that the vehicle should be forfeited to the conditional purchaser is clear from its statement, at the time it announced judgment, that "The parties agree that the automobile in question was sold by the repossessing party, and that return of the automobile cannot now be had. . . . Accordingly, the judgment of the Court will necessarily be for the value of the automobile at the time . . . of the taking in this claim and delivery proceeding."

Such an award does not accord with our understanding of the legislative intent of section 2982 which is implicit in the statute and which the courts have attempted to make explicit by decisions hereinafter cited. On the other hand, as we shall explain, the words of the statute do not require, and effectuation of the statutory purpose would be frustrated by, acceptance at face value of the contention of GMAC that a contract which violates subdivision (a) of section 2982, quoted *supra,* footnote 1, is "enforceable by a bona fide purchaser for value."

As to the just stated contention of GMAC, defendant Kyle points out that nothing in the record on appeal indicates that GMAC was or attempted to show that it was a "bona fide purchaser for value." The complaint of GMAC alleges that it "was the owner of a certain conditional sales contract by an assignment in writing," and Kyle's answer and counterclaim and the trial court's findings and conclusions describe GMAC as an "assignee." ■■ Since the case was tried on this theory, and the facts on which GMAC's belatedly advanced legal argument is based were not presented to the trial court, it is improper for GMAC to assert for the first time on appeal that its rights are greater than those of its assignor. (*Ernst* v. *Searle* (1933), 218 Cal. 233, 240-241 [6, 7] [22 P.2d 715]; see *Ward* v. *Taggart* (1959), 51 Cal.2d 736, 742 [6, 7] [336 P.2d 534].) However, since the case must be remanded for a new trial on the issue of the amount of recovery, it is appropriate that we forestall any thought of GMAC that on such trial it might be able to show a right to enforce the contract of conditional sale as a bona fide purchaser. (See Code Civ. Proc., § 53.)

In an effort to show that it took without notice of the illegality of the contract, GMAC asserts for the first time on

appeal that the copy of the contract which it received was signed by a representative of the seller and that it had no knowledge that Kyle's copy was not so signed or that the recited amount of the cash down payment was not correct.

But the failure of the contract to describe and itemize amounts to be paid as fees appears on the face of the contract and therefore GMAC could in no event properly claim that it had no notice of that defect.

More fundamentally, as will appear from the hereinafter related legislative and judicial developments since the enactment of section 2982 of the Civil Code, GMAC is mistaken in its contention that a contract which violates subdivision (a) of such section is enforcible by a bona fide purchaser for value from the conditional seller. As stated above, the legislative purpose of the section is the protection of instalment buyers of automobiles from concealed and excessive finance and interest charges.[2] Subdivision (a) of section 2982, quoted *supra,* footnote 1, requires that the conditional sale contract be in writing, with specified contents, and that an exact copy be delivered to the buyer; subdivision (b) requires the seller to furnish the buyer who pays for insurance under the contract with an exact copy of the insurance policy; subdivision (c) establishes the maximum permitted "time price differential" (finance and interest charges); and subdivision (d) (added by Stats. 1949, ch. 1594, p. 2842) provides for a refund credit to a buyer who satisfies his indebtedness under the contract before its maturity, and specifies the permissible minimum amount of such refund credit. Subdivisions (a) and (b) are designed to enable the buyer to know just what his contract is; subdivisions (c) and (d) are directly aimed at excessive charges which are akin to usury but to which, by common law (*Wilson* v. *J. E. French Co.* (1931), 214 Cal. 188, 189 [2] [4 P.2d 537]; *Lamb* v. *Herndon* (1929),

---

[2]Statutes of other states directed at these evils, some limited to motor vehicles and some covering other commodities, are cited, and the growing volume of such regulation appears in, Note, *Prepayments, Refunds, and Confusion Under the Automobile Sales Act* (1950), 2 Stanf.L.Rev. 362; Note, *Regulation of Retail Installment Sales* (1950), 63 Harv.L.Rev. 874; Britton and Ulrich, *Illinois Retail Installment Sales Act* (1958), 53 Northw.L.Rev. 137, 151-152 (noting also the Federal Trade Commission's Trade Practice Rules Relating to the Retail Installment Sale and Financing of Motor Vehicles (1951), 16 Fed.Reg. 1059); Hogan, *A Survey of State Instalment Sales Legislation* (1958), 44 Corn.L.Q. 38; Warren, *Regulation of Finance Charges* (1959), 68 Yale L.Journ. 839. The Unruh Act (Civ. Code, § 1801 et seq.; Stats. 1959, ch. 201) now regulates California retail instalment sales of goods other than motor vehicles and of services.

97 Cal.App. 193, 200 [3] [275 P. 503]; see *Milana* v. *Credit Discount Co.* (1945), 27 Cal.2d 335, 340 [4, 5] [163 P.2d 869, 165 A.L.R. 621]), the usury statutes do not apply. The requirements of subdivisions (a) and (b) have been aptly called "formal" and those of subdivisions (c) and (d), "substantive" (Note, *California Motor Vehicle Installment Sales Act* (1951), 39 Cal.L.Rev. 450) and we shall adopt that terminology.

Section 2982 does not specify the effect of violation of the formal requirements. Sanctions for substantive violations have been stated and amended by the Legislature,[3] but their operation if they are literally applied is entirely fortuitous, depending upon the amount of the down payment as compared to the total price, upon when the sanctions are invoked, and upon whether the seller transfers the contract to a "bona fide purchaser for value"; such sanctions afford no uniformly operative scheme of penalizing the seller or protecting the buyer. Furthermore, the Legislature has said nothing about the effect of violations upon the property rights in the vehicle.[4]

In *Carter* v. *Seaboard Finance Co.* (1949), *supra*, 33 Cal.2d 564, we held that substantial violations of formal requirements of subdivision (a) of section 2982 render the contract unenforcible by the seller[5] and that a buyer who has made

---

[3]The 1945 version of section 2982, considered in *Carter* v. *Seaboard Finance Co.* (1949), *supra*, 33 Cal.2d 564, provided (subd. (c)) that "If the seller, except as a result of an accidental and bona fide error in computation, shall violate any provision of this subdivision (c), the conditional sale contract shall not be enforceable except by a purchaser for value, and the buyer may recover from the seller in a civil action three times the total amount paid on the contract balance by the buyer to the seller or his assignee pursuant to the terms of such contract."

Since 1949 subdivision (e), the successor to the original portion of subdivision (c) just quoted, has provided that "If the seller, except as the result of an accidental or bona fide error in computation, shall violate any provision of subdivisions (c) or (d) of this section, the conditional sale contract shall not be enforceable, except by a bona fide purchaser for value, and the buyer may recover from the seller in a civil action the total amount paid on the contract balance by the buyer to the seller or his assignee pursuant to the terms of such contract."

[4]This uncertainty, unevenness, and incompleteness of the statutory provisions have been the subject of considerable law review comment. (*Work of the 1949 California Legislature* (1949), 23 So.Cal.L.Rev. 1, 39-40; Note (1950), *supra*, 2 Stanf.L.Rev. 362; note (1951), *supra*, 39 Cal.L. Rev. 450.)

[5]Some cases have said that contracts which do not conform to section 2982 are "void." Rather, they are voidable at the instance of the buyer. And although the seller who violates subdivision (a) of section 2982 does not have all the rights of a legal conditional vendor against the

payments to the seller under such a contract can recover them. In so holding, we took into account the fact that the section expressly prescribed sanctions for substantive violations and concluded that such sanctions were not inconsistent with the court-declared effect of formal violations (pp. 572-573 [9a-9b], 573-574 [12] of 33 Cal.2d). The Legislature has since repeatedly amended section 2982, and the courts have since frequently passed upon the effect of violations, but, except for implied recognition in 1951 of the rule of unenforcibility announced in the Carter case,[6] none of the amendments state the effect of formal violations or clarify the effect of substantive violations. Therefore, we take it, the Legislature has been satisfied with the efforts of the courts to work out these problems as to which it has chosen to remain silent. (See *Gardner* v. *State* (1959), 53 Cal.2d 23, 29 [346 P.2d 193]; *Baum* v. *Aleman* (1956), 139 Cal.App.2d Supp. 929, 932 [2] [293 P.2d 162].) The results of those efforts are rules based on the theory that the rights of the buyer against the seller arising from formal violations are in the nature of traditional rescission and restitution (but without the need for prompt notice and offer to restore required by Civ. Code, § 1691; see *Estrada* v. *Alvarez* (1952), 38 Cal.2d 386, 389-391 [240 P.2d 278]) and that the buyer's recovery from the seller for substantive violations which do not result from accidental or bona fide errors in computation, is not limited to restitution because the Legislature has expressed the intention that the seller should be penalized for such violations. Rules concerning rights between buyer and seller are as follows:[7]

 Although the express legislative sanctions for substantive violations by the seller (footnote 3, *supra*) state that the seller cannot enforce the contract and the buyer can recover "the total amount paid on the contract balance," the courts have not considered that such sanctions are an exclu-

---

defaulting vendee, as hereinafter explained, the seller does not completely forfeit his security interest in the vehicle by virtue of such violation.

[6]The amendments are cited in footnote 1, *supra*. The amending began after our Carter decision (filed March 11, 1949) by Stats. 1949, ch. 1594, p. 2842, approved August 2 and effective October 1, 1949. The 1951 amendment added to paragraph 2 of subdivision (a) a requirement that the seller refund or credit to the buyer the amount realized on any insurance policy assigned to the seller, with the express provision that failure to comply with such requirement shall not affect the enforcibility of the contract.

[7]Rules as to rights between buyer and the seller's transferee are hereinafter developed.

sive remedy; rather, for violations either substantive or formal, the buyer can invoke the restitutive measure of recovery and obtain the total amount or value of that with which he parted, including down payments, less offsets hereinafter described. (*City Lincoln-Mercury Co.* v. *Lindsey* (1959), 52 Cal.2d 267, 274 [2b] [339 P.2d 851]; *Lewis* v. *Muntz Car Co.* (1958), 50 Cal.2d 681, 684 [1] [328 P.2d 968].) ▮ The measure of recovery for an automobile traded in is its actual retail market value, rather than its trade-in value. (City Lincoln-Mercury case, *supra,* pp. 274-275 [9] of 52 Cal.2d.) ▮ The seller whose violations are formal only can have an offset "in an amount representing the depreciation in value of the car occasioned by the use made of it by the buyer while in his possession, which necessarily excludes any allowance for depreciation resulting from a general decline in the market value of such automobile during the period in question" (*Williams* v. *Caruso Enterprises* (1956), 140 Cal. App.2d Supp. 973, 980 [5, 6] [295 P.2d 592]); because the buyer is a member of a protected class, the offset is not measured by the rental value of the car,[8] for such measure would improperly allow the seller a profit, and the seller can in no event recover on the theory of offset more than an amount equal to that which the buyer is entitled to recover (*id.*). The seller who is guilty of intentional substantive violations is penalized by not allowing him an offset. (City Lincoln-Mercury case, *supra,* pp. 275-276 [11a-11b], 277 [14] of 52 Cal.2d; Lewis case, *supra,* pp. 686-687 [2] of 50 Cal.2d.) ▮ Since "[t]he courts will not impose penalties for noncompliance with statutory provisions in addition to those that are provided expressly or by necessary implication" (City Lincoln-Mercury case, *supra,* p. 276 [12] of 52 Cal.2d), we think that the Legislature could not have intended to tacitly impose so harsh a sanction as forfeiture of the vehicle against the seller whose violations are only formal. In such

---

[8]The measure of the offset announced in the Williams case (1956), *supra,* p. 980 of 140 Cal.App.2d Supp., was accepted without particular discussion in the Lewis case (1958), *supra,* pp. 684, 688 of 50 Cal.2d, and the matter was expressly left undetermined in the City Lincoln-Mercury case (1959), *supra,* p. 277 of 52 Cal.2d. We accept the measure of the Williams case rather than that suggested in *Baum* v. *Aleman* (1956), *supra,* 139 Cal.App.2d Supp. 929, 933, and *United States Credit Bureau* v. *Sanders* (1951), 103 Cal.App.2d 806, 816 [11] [230 P.2d 849] [reasonable value of use of conditionally sold car], or in *Adams* v. *Caruso Enterprises Inc.* (1955), 134 Cal.App.2d 403, 408, 409 [2] [285 P.2d 1022] [difference between rental value of the conditionally sold vehicle and the automobile traded in].

a situation the buyer cannot both recover the consideration with which he has parted and keep the vehicle; he cannot simultaneously avoid the conditional sale contract and assert rights in the conditionally sold car. (*Williams* v. *Caruso Enterprises* (1956), *supra*, 140 Cal.App.2d Supp. 973, 979 [4].) The conditional seller whose violations of section 2982 are only formal can keep the car if he retakes it from the defaulting buyer without aid of a court (*id.*; see the Lewis case (1958), *supra*, pp. 686, 688 of 50 Cal.2d, rejecting without particular discussion the buyer's contention that he should recover the car from the repossessing assignee of a seller whose violations were both formal and substantive). And the seller whose violations are formal only should not be penalized if, instead of repossessing the vehicle by his own action, he seeks the aid of legal process to retake it.

The anomalous results reached in some cases of seriously illegal contracts of sale of goods, where the courts leave the parties as they find them, sometimes with one party retaining possession although the other has title (see 3 Williston, Sales (1948), §§ 677, 678; *Smith* v. *California Thorn Cordage, Inc.* (1933), 129 Cal.App. 93, 101 [18 P.2d 393]), would follow in the situation under discussion from application of the general rule that the guilty party to an illegal contract cannot enforce it or recover on principles of quasi contract benefits he has conferred under the contract. (City Lincoln-Mercury case, *supra*, p. 276 [13] of 52 Cal.2d.) But there is no need to reach such an anomalous result where the conditional seller's illegality consists of a formal, harmless violation of section 2982. That situation can be analogized to the position of the usurer who can recover the amount of the principal loaned, less an offset of the illegal interest which has been paid and "treble damages" for payments of usurious interest not barred by limitations. (*Rice* v. *Dunlap* (1928), 205 Cal. 133, 136 [2] [270 P. 196]; *Shirley* v. *Britt* (1957), 152 Cal. App.2d 666, 670 [4] [313 P.2d 875].) Just as the usurer can enforce the legal portion of his contract, the agreement of the borrower to repay the principal indebtedness, the seller whose violations of the conditional sale contract are merely formal, although he cannot enforce the contract as a whole, can enforce the legal provision for return of the vehicle when the condition is broken.

 The Williams case (1956), *supra*, p. 979 of 140 Cal.App.2d Supp., where the violation was formal, in the course of able and helpful discussion of the problems posed

by the subject legislation, contains the following dictum: The buyer, "if sued for the possession of the automobile or installments accrued under the contract, doubtless could successfully defeat the action without surrendering the car or making the payments due under the contract." Insofar as this dictum may suggest that a defaulting buyer sued by a seller who has committed merely formal violations of section 2982 can keep the vehicle and pay nothing, it is disapproved.

But this limited enforcibility of this one aspect of the conditional sale contract follows from the general purpose of the statute (which is merely to protect, not to enrich, the buyer in cases of purely formal violations); it is a right of the seller and not, as GMAC urges, a right which arises as a result of a bona fide purchase of the contract from the seller.

Such limited right of enforcement passes to the seller's transferee under familiar rules concerning the assignment of contract rights in nonnegotiable instruments. The assignee of the seller's contract rights is subject under such rules to defenses and counterclaims of the buyer-obligor against the seller-assignor (*Bliss* v. *California Cooperative Producers* (1947), 30 Cal.2d 240, 250 [8] [181 P.2d 369, 170 A.L.R. 1009]; *Western Oil etc. Co.* v. *Venago Oil Corp.* (1933), 218 Cal. 733, 738 [2] [24 P.2d 971, 88 A.L.R. 1271]; *Parker* v. *Funk* (1921), 185 Cal. 347, 352-353 [3, 4, 7] [197 P. 83]; *Pacific Rolling Mill Co.* v. *English* (1897), 118 Cal. 123, 129 [50 P. 383]; *Alpers* v. *Hunt* (1890), 86 Cal. 78, 90 [24 P. 846, 21 Am.St.Rep. 17, 9 L.R.A. 483]; Code Civ. Proc., §§ 368, 440; Civ. Code, § 1459), and we find nothing in section 2982 which supports the contention of GMAC that the Legislature intended the law of bona fide purchase, with the cutting off of defenses and equities, to apply to the transfer by the seller of a formally defective contract of conditional sale of an automobile. GMAC is mistaken in its assertion that subdivision (e) of section 2982, quoted *supra*, footnote 3, "specifically provides that a contract [such as the one here, which violates subdivision (a)] shall be enforceable by a bona fide purchaser for value." Rather, that subdivision expressly applies only to contracts which violate subdivisions (c) and (d). We are not here confronted with the question of the effect of subdivision (e), in cases of substantive violations by the seller, upon the normal rule that "the assignee of a non-negotiable chose in action . . . , though he buys it for value, and in good faith, takes it subject to all defenses

which the obligor may have against the assignor . . ." (2 Williston, Contracts (rev. ed., 1936), p. 1243, § 432.)

GMAC urges that under *Lewis* v. *Muntz Car Co.* (1958), *supra,* 50 Cal.2d 681, 683, 688, the buyer can recover from the seller's assignee only the consideration which he actually paid to the assignee, not the down payment which he made to the seller. This was the result reached in the Lewis case, but the contention made by GMAC here was not there presented or discussed and therefore the case is not authority on this point. (*Fricker* v. *Uddo & Taormina Co.* (1957), 48 Cal.2d 696, 701 [6] [312 P.2d 1085]; *In re Tartar* (1959), 52 Cal.2d 250, 258 [13] [339 P.2d 553].) **[18]** Rather, since the assignee "stands in the shoes of the assignor," to exercise the seller's limited right to repossess the vehicle because of the buyer's default, the assignee must restore to the buyer that with which the buyer parted under the illegal contract, including payments which he made to the seller-assignor prior to the assignment.

GMAC further contends that Kyle is in no event entitled to recover because the evidence establishes that the offset to which GMAC is entitled exceeds the consideration with which he parted. The trial court made no findings based upon the above stated restitutive rules of recovery, and the evidence in the record is not such that an appellate court could make such findings.

For the reasons above stated, the judgment is reversed with directions to permit Kyle, if he be so advised, to amend his counterclaim to allege, and to permit the parties to introduce evidence of, the amount if any which Kyle may be entitled to recover from GMAC in accord with the foregoing views.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., White, J., and Dooling, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.