[Civ. No. 28895.   Second Dist., Div. One.   Mar. 15, 1966.]

ROBERT E. COLLINS et al., Cross-complainants and Respondents, v. BANK OF AMERICA, Cross-defendant and Appellant.

Samuel B. Stewart, R. H. Fabian, Harris B. Taylor and Jack J. Walley for Cross-defendant and Appellant.

No appearance for Cross-complainants and Respondents.

WOOD, P. J.—Plaintiff collection agency brought this action to recover a deficiency on a conditional sales contract whereby cross-defendant Art Frost had purportedly sold a DeSoto automobile to defendant Collins and Collins' wife, Juel. In a cross-complaint, the Collinses sought damages against several cross-defendants, including Frost and the Bank of America (to which Frost had assigned the contract) on the grounds that the contract had been made as a result of fraudulent misrepresentations (by Frost) and in violation of the provisions of section 2982 of the Civil Code. Judgment was entered in favor of defendant (Robert E. Collins) on the complaint, and against cross-defendants Frost and Bank of America on the cross-complaint in the sum of $2,756.88 (the amount paid by the Collinses to Frost and the Bank pursuant to the contract). The Bank appeals from that portion of the judgment which is against the Bank on the cross-complaint. (Respondents have not filed a brief or made an appearance herein.)

Appellant (Bank) contends that the money paid by the Collinses pursuant to the conditional sales contract cannot be recovered from the Bank because the Bank was a ''bona fide purchaser for value of the contract.''

The facts may be summarized from the findings, which are in substance as set forth in the following paragraphs.

On March 27, 1959, Frost and the Collinses entered into a ''Motor Vehicle Conditional Sales Contract'' whereby Frost sold a 1959 DeSoto automobile to the Collinses for $6,298.84, less the sum of $1,000 as a down payment and trade-in allowance, with the balance ($5,298.84) to be paid in installments of $147.19 per month, commencing May 5, 1959.

Among other things, the contract provides that should the buyers default in payment of installments when due, the seller can repossess the car, sell it, credit the net proceeds of the sale

against the balance due on the contract, and demand payment of any deficiency from the buyers.

The Collinses (buyers) did not pay the installment due on April 5, 1960, and, on May 4, 1960, the DeSoto was reposessed[1] and sold for $2,725, which sum was the reasonable value of the DeSoto at the time of the sale. The deficiency between the balance due on the contract and the net proceeds from the sale was $722.50.

The purported conditional sales contract was not prepared, executed, and delivered as required by the provisions of section 2982, subdivision (a), of the Civil Code in that the copy of the contract delivered to the Collinses was not signed by the seller or the seller's authorized representative, and neither the original nor the copy of the contract was signed by Juel Collins, one of the buyers, or by her duly authorized representative.

The contract fails to recite all of the agreements between the buyer and seller relating to the DeSoto as required by said section 2982, subdivision (a), in that prior to the execution of the contract Frost circulated information to the effect that persons could apply to Frost "to earn a new automobile free without any costs." Pursuant to that information, the Collinses applied to Frost for a free automobile, and Frost made the following representations to them: As part of a promotional plan authorized by automobile manufacturers, Frost could allow "select persons" to earn a free automobile because such persons would be seen driving the automobile, thereby interesting their friends, relatives, and associates, and creating more interest in the automobiles than could be created by direct advertising; Frost had no intention of selling an automobile to the Collinses; by reason of Mr. Collins' occupation (parole agent), which brought him in contact with a large number of people, the Collinses had been specially selected to earn the DeSoto automobile free under the promotional plan; if the Collinses would refer to Frost 12 persons who had qualifications similar to the Collinses, "to wit, contacts with a number of people," the Collinses would receive the pink slip to the DeSoto and at least $100 for each additional referral; the Collinses would be acting as "advertising representatives

---

[1] Collins returned the DeSoto to Frost on May 5. According to statements in appellant's (Bank's) brief, the Bank thereafter resold the contract to Frost who then assigned the contract to plaintiff for collection of the deficiency.

or public relations persons'' for Frost, rather than as purchasers of an automobile.

At the time Frost made said representations, the Collinses ''repeatedly informed'' Frost that they could not afford an automobile, and did not desire to buy one. After Frost had made said representations, Frost presented to the Collinses ''a number of documents and forms commonly used in connection with the sale of automobiles, including the purported conditional sales contract,'' and represented that it would be necessary for the Collinses to execute the documents in order to show ''good faith.'' Frost further represented to, and agreed with, the Collinses that they would earn the automobile ''without any costs whatsoever''; that they would do so without paying a down payment or monthly payment; that any money or property which they ''traded for'' or paid as a down payment would be refunded in the form of credits under the plan; and that numerous other persons had earned their cars in the same manner.

In reliance upon said representations and agreement by Frost, and believing them to be true, the Collinses accepted delivery of the DeSoto automobile, and Robert E. Collins signed the conditional sales contract. The agreement that the Collinses were to earn the DeSoto ''free'' by referring persons to Frost does not appear in said contract, as required by section 2982, subdivision (a), of the Civil Code. The contract violates the provisions of said section 2982 in that it falsely recites that the sum of $700 was paid in cash, whereas in truth only $590, which the Collinses obtained by a loan, was paid. There was a failure to comply with said section 2982 in that Frost (seller) did not send a true copy of certain insurance policies to the Collinses.

The Collinses, in good faith and in reliance upon said representations, undertook to and did refer 21 of their friends, relatives, and associates to Frost to earn free automobiles under said plan, and expended substantial time doing so. Frost refused to accept said persons under the plan, refused to administer said plan in a fair manner, and represented said plan ''differently'' to said persons so referred, thereby breaching and repudiating the agreement whereby the Collinses were to earn the DeSoto.

The down payment, consisting of $570 ($590)[2] in cash and

---

[2]The findings refer to that cash sum as $590 and $570. Robert Collins testified that the sum paid was $591.27, which is the sum (stated on the loan statement) that the Collinses borrowed from a finance company.

the agreed value of $300 for the Oldsmobile automobile which the Collinses traded in, was paid to Frost (seller), and the original contract was sold and assigned by Frost to the Bank of America on March 27, 1959 (the same date the "contract" was made). When the contract (original) was delivered by Frost to the Bank, it was completely "filled in" and was signed by an authorized representative of Frost, but it was not signed by Juel Collins or her authorized agent.

At the time when the contract was delivered to the Bank, the Bank was not aware that the copy thereof which was delivered to Robert Collins had not been signed by Frost or Frost's authorized representative; and the Bank was not aware of the "referral agreement" made by Frost. "Shortly thereafter" (i.e., after the contract had been assigned), the Collinses informed the Bank of said referral agreement by "repeated complaints" to the Bank with reference to Frost's refusal to perform the referral agreement.

In addition to the findings as set forth in the hereinabove paragraphs, there were findings in substance as follows: The referral plan was merely a scheme to sell automobiles and was not an advertising program as represented. The Collinses have been damaged in the sum of $2,756.88, of which $1,756.88 was paid to the Bank, and the down payment[3] was paid to Frost. The cross-defendants (Frost and the Bank) violated the provisions of section 2982 of the Civil Code in the manner hereinabove found. The contract was rendered unenforcible by Frost or by the Bank. The cross-complainants (Collinses) are entitled to recover from the cross-defendants, Frost and the Bank, the sum of $2,756.88. All of the allegations of the Bank's cross-complaint for breach of warranty are true. (Apparently the Bank filed a cross-complaint against Frost. That pleading is not part of the record, but a portion of the judgment is that the Bank recover $2,756.88 from Frost on the Bank's cross-complaint.) "The court makes no finding as to the value of the use of the automobile by the Collinses, since no evidence was offered or received on that issue."

Appellant contends that the money paid by the Collinses pursuant to the conditional sales contract cannot be recovered from the Bank because the Bank was a "bona fide purchaser for value of the contract."

---

[3] As the other findings show, the contract recites a down payment of $700 cash and an automobile valued at $300, but in fact only $590 of the $700 cash was paid.

When the conditional sale contract was made in 1960, section 2982, subdivision (a), of the Civil Code provided in part that every conditional sale contract for the sale of a motor vehicle shall be in writing; shall contain all of the agreements between the buyer and seller relating to the personal property described in the contract; shall be signed by the buyer or his authorized representative, and by the seller or his authorized representative; when so executed an exact copy thereof shall be delivered to the buyer; and shall recite certain items such as the cash price, the amount of the down payment, the amount of the unpaid balance, the cost of insurance, etc.

Subdivision (b) of said section provided (in 1960) that within 30 days after the execution of the contract the seller shall send to the buyer an exact copy of an insurance policy or certificate of insurance for which a charge is to be paid by the buyer.

In the present case, as above shown, there were findings to the effect that the ''referral'' agreement between the seller (Frost) and the buyers (Collinses) was not included in the conditional sale contract; the copy of the contract which was delivered to the buyers was not signed by the seller or his authorized agent; the original contract was not signed by one of the buyers (Juel Collins) or her authorized agent, and that fact appeared on the face of the contract when the contract was assigned to the Bank; shortly after the contract had been assigned (and apparently before payments were made to the Bank), the buyers ''repeatedly'' told the Bank about the referral agreement; the contract ''falsely'' recites the down payment of $700 to have been paid in cash; and the buyers never received exact copies of the insurance policies for which a charge was made in the contract.

It thus appears that there had been substantial violations of the provisions of subdivisions (a) and (b) of said section 2982, and that the Bank, at the time of the assignment, had notice from the face of the contract that the contract had not been signed by one of the buyers or her authorized agent.

In *General Motors Accept. Corp.* v. *Kyle,* 54 Cal.2d 101 [4 Cal.Rptr. 496, 351 P.2d 768], a conditional sale contract for the sale of a motor vehicle did not comply with subdivision (a) of said section 2982 in several particulars. When the contract was assigned to GMAC, some of the particulars appeared on the face of the contract. After the buyer (Kyle) had defaulted in payment of the purchase price, GMAC brought an

action on the contract. Kyle counterclaimed for specific recovery of the vehicle or its market value, and the trial court entered a judgment in favor of Kyle for the value of the vehicle. On appeal, GMAC argued in effect that it was "a bona fide purchaser" of the contract and therefore could not be liable for violations of said subdivision (a) by its assignor. The Supreme Court reversed the judgment with directions that Kyle be permitted to amend his counterclaim, and offer evidence, to show the amount with which he parted under the illegal contract, and said (p. 114) : "Rather, since the assignee 'stands in the shoes of the assignor,' . . . the assignee must restore to the buyer that with which the buyer parted under the illegal contract, including payments which he made to the seller-assignor prior to the assignment." The court discussed (pp. 110-113) the rights of buyers and sellers where there have been formal violations of section 2982, and said in substance that the buyer's rights are in the nature of traditional recission and restitution, but without the need for prompt notice and offer to restore; that the seller is entitled to repossess the car, and is entitled to an offset in an amount "representing the depreciation in value of the car occasioned by the use made of it by the buyer while in his possession"; and that the seller's rights pass to the seller's assignee. Following that discussion, the court said (p. 113) : "The assignee of the seller's contract rights is subject under such rules to defenses and counterclaims of the buyer-obligor against the seller-assignor [citations], and we find nothing in section 2982 which supports the contention of GMAC that the Legislature intended the law of bona fide purchase, with the cutting off of defenses and equities, to apply to the transfer by the seller of a formally defective contract of conditional sale of an automobile." Appellant argues to the effect that, in the *General Motors* case, the court's comments on the question of bona fide purchaser are obiter dictum, are inconsistent with other rules of contract law, and should not be determinative in the present case. That decision is controlling herein.

Appellant further contends that the court should have made a finding that the Bank was a bona fide purchaser for value of the contract. The court made several findings to the effect that the Bank was an assignee of the contract, and, in view of the aforementioned statements in the *General Motors* case, the findings are proper.

In the present case, the findings and judgment are to the

effect that the buyers (Collinses) are entitled to recover the money which they paid to the Bank and the Bank's assignor under the illegal contract. No offset was allowed for depreciation in value of the DeSoto resulting from the buyers' use thereof. The court found, however, that no evidence of value was presented, and, for that reason, no finding was made on the issue of value.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied April 7, 1966, and appellant's petition for a hearing by the Supreme Court was denied May 11, 1966.

