**SWIFT DODGE, Petitioner-Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

No. 81–7440.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 14, 1982.

Decided Nov. 19, 1982.

William A. Whitledge, Washington, D.C., argued, for respondent-appellant; Gary R. Allen, Washington, D.C., on brief.

Thomas E. Smail, Jr., Sacramento, Cal., for petitioner-appellee.

Appeal from a Decision of the Tax Court of the United States.

Before WISDOM *, SNEED and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

Swift Dodge, a California corporation, claimed an investment tax credit on its 1974 and 1975 federal income tax return for its investment in motor vehicles that were purchased for use under a "Lease Agreement" in the amounts of $25,923 and $22,168, respectively. After an audit of Swift Dodge, the Commissioner determined that the lease agreements were essentially conditional sales contracts. The Commissioner disallowed the claimed credit because he determined that the taxpayer was not the owner of the vehicles for which the credit was claimed.

The Internal Revenue Code permits a tax credit (7% during 1974–75) of a taxpayer's qualified investment in "Section 38" property. 26 U.S.C. §§ 38, 46. Section 48(a) defines Section 38 property to include tangible personal property "with respect to which depreciation ... is allowable and having a useful life ... of 3 years or more." Property owned by a taxpayer and leased to others by him in his business is depreciable property and qualifies for the credit. Property purchased for resale is not depreciable under Section 167 and therefore

* The Honorable John M. Wisdom, Senior Judge     for the Fifth Circuit, sitting by designation.

is not Section 38 property eligible for the credit. Whether the investment tax credit was properly disallowed turns on whether, for purposes of federal tax law, the transactions between Swift Dodge and the vehicle users are leases or conditional sales contracts.

The taxpayer, Swift Dodge, operates an automobile dealership and sells automobiles, vans, and light trucks manufactured by the Chrysler Corporation. In addition to the usual sales business, the taxpayer offers vehicles of any manufacturer to its customers under a standard form lease provided by Chrysler. During the tax years in dispute, Swift Dodge's selling and leasing operations were treated as separate divisions, were located in separate buildings, and had separate bookkeeping and computer operations.

The typical lease lasted 36 months. Although the form permitted different terms, the typical agreement executed by Swift Dodge and its customers required the lessee to provide a specified amount of insurance for the benefit of Swift Dodge, to pay all taxes, and to perform all necessary maintenance and repairs for the vehicle. The agreement also contained provisions showing the amount of money which the lessee would have to pay Swift Dodge in the event of premature termination, loss due to theft or damage, or normal expiration of the agreement. The agreement shifted the risk of depreciable loss to the vehicle user. In contrast to a "close-ended" lease, under this "open-ended" type of lease, *see Swift Dodge v. Commissioner*, 76 T.C. 547, 568–69 & n. 11 (1981), the lessee was required to pay, when the lease terminated, the amount, if any, by which the estimated "depreciated value" of the vehicle, as set forth in the agreement, exceeded its actual wholesale value. Similarly, if the actual wholesale value of the vehicle exceeded its estimated "depreciated value," the lessee would "receive any gain which result[ed] from final disposition of the vehicle." Although the lease did not contain an option to purchase, the tax court found that Swift Dodge's practice was to permit the lessee to retain the vehicle at the expiration of the agreement and to pay only the "depreciated value" to Swift Dodge—regardless of the actual value of the vehicle. Approximately one-half of the lessees paid the specified balance and retained the vehicle when the lease ended.

To purchase the vehicles, Swift Dodge borrowed money from the Bank of America National Trust and Savings Association and the United California Bank. Swift Dodge usually borrowed an amount needed to cover the purchase price of the vehicles.

Swift Dodge contends that the questioned transactions are leases, and that it owned and leased the vehicles and therefore was entitled to the claimed investment tax credit. The Commissioner contends that the transactions are conditional sales contracts, and that Swift Dodge did not own the vehicles and was not entitled to the credit.

The tax court held that the agreements were leases. *Swift Dodge v. Commissioner*, 76 T.C. 547 (1981). The Commissioner appeals.

■ The parties do not dispute the specific factual findings of the tax court concerning the operation and terms of the agreements. The issue is whether the tax court erred by holding that these agreements were leases rather than conditional sales contracts. Whether the agreement is a "sale" or a "lease" for federal tax purposes is a question of law and is therefore fully reviewable on appeal. *See Frank Lyon Co. v. United States*, 435 U.S. 561, 581 n. 16, 98 S.Ct. 1291, 1302 n. 16, 55 L.Ed.2d 550 (1978); *Estate of Franklin v. Commissioner*, 544 F.2d 1045, 1047 n. 3 (9th Cir. 1976).

■ The characterization of a transaction for federal tax purposes is controlled by the substantive provisions of the agreement and the parties' conduct, rather than by the particular terminology used in the agreement. *Frank Lyon*, 435 U.S. at 573, 98 S.Ct. at 1298.

Before determining the nature of this transaction, we first note that this transaction was not a multiple-party sale and financing transaction in which Swift Dodge

served merely as a conduit of funds from the vehicle users to the banks which loaned the money for the purchase of the vehicles. In *Frank Lyon* the Supreme Court determined that where the third-party participant in a multiple-party transaction assumed actual risks and therefore was not a mere conduit of funds, the sale and leaseback transaction was not a sham and the form of the transaction adopted by the parties governed for tax purposes.

In *Frank Lyon,* as in this case, the third-party (Swift Dodge) assumed risks that were both actual and significant. In both cases the taxpayer, and not the user of the asset, was liable on the loan instrument to the bank. In both cases the taxpayer's accounting system was consistent with a lease. There were independent parties who negotiated at arm's length. *Frank Lyon,* 435 U.S. at 576–81, 98 S.Ct. at 1299–1302; *Davis v. Commissioner,* 585 F.2d 807, 814–15 (6th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1789, 60 L.Ed.2d 241 (1979). Further, in both cases the user of the asset could walk away from the lease at its expiration. In this case the taxpayer, Swift Dodge, also had the responsibility of disposing of the asset when the lease ended. Swift Dodge was not merely a conduit in a financing transaction between the vehicle user and the bank.

■ The Commissioner, however, asserts that the transaction was a two-party sales transaction between Swift Dodge and the vehicle user. Swift Dodge counters that the transaction was a lease. In determining the economic realities of the transaction we look at the substantive provisions of the agreement and the parties conduct with respect to it. We review the benefits, obligations, and rights of Swift Dodge and the user to determine whether they indicate the existence of a conditional sale or a lease. Under a conditional sale, the seller reserves title until the buyer pays for the goods. At that time, the condition is fulfilled and title passes to the buyer. *See* Black's Law Dictionary 267 (5th ed. 1979).

■ The user of the vehicle was required to insure for fire, theft, comprehensive, collision, public liability, and property damage, and was responsible for all operating and maintenance expenses except those covered by the manufacturer's warranty. The user was also responsible for all taxes, including licensing, sales, excise, and property taxes. Swift Dodge did not have similar burdens under the agreement. However, to minimize potential liability, it purchased excess insurance in case the vehicle user was not adequately insured. The *only* duty imposed on Swift Dodge was to find a purchaser for the vehicle when the agreement terminated.

The allocation of duties in the agreement is no different than they would be under a conditional sales contract. In an installment sale in California, the seller must mitigate damages before suing the buyer for a deficiency. The seller would have to mitigate the buyer's damages by selling the asset and applying the proceeds to the amount due. *See* Cal.Civ.Code § 2983.2; *Hill v. Dominquez,* 138 Cal.App.2d Supp. 891, 291 P.2d 203, 204 (1955). Similarly, a sales agreement typically requires the user to insure the vehicle.

Next we look at the parties' legal rights. Swift Dodge retained the legal title to the vehicle and the right to assign the user's payments from the agreement to third parties. Swift Dodge would retain these rights under a conditional sales contract. Cal.Civ. Code § 2983.5; *see General Motors Acceptance Corp. v. Kyle,* 54 Cal.2d 101, 4 Cal. Rptr. 496, 351 P.2d 768 (1960). Upon premature termination of the agreement, Swift Dodge also had the right to take possession of the vehicle and resell it. This is essentially the same right Swift Dodge would have under a typical conditional sales contract.

The user had the right to use the vehicle as long as the terms of the agreement were satisfied and could keep the vehicle at the expiration of the agreement if the user paid an amount equal to the vehicle's depreciation value as specified in the agreement. A purchaser under a conditional sales contract with a balloon payment would have an identical right.

Next we analyze the parties' risks. The user assumed the risk of damage, theft, or destruction. More importantly, because this was an "open-ended" lease, the customer assumed the risk of depreciation. *See Swift Dodge,* 76 T.C. at 568–69 & n. 11. If the vehicle did not depreciate as quickly as anticipated, the user had a gain when the vehicle was sold. But if the vehicle depreciated at a rate greater than anticipated, the user suffered a loss upon eventual sale. If the user decided to keep the vehicle, he made no gain or loss. These are the same risks a buyer assumes under a conditional sales contract. In contrast, the contested leases in *Northwest Acceptance Corp. v. Commissioner,* 500 F.2d 1222 (9th Cir.1974), aff'g per curiam, 58 T.C. 836 (1972), and *Lockhart Leasing Co. v. United States,* 446 F.2d 269 (10th Cir.1971), were "close-ended" leases.

The only risk Swift Dodge assumed was the risk of default by the purchaser. This is the same risk that would be assumed by the holder of a security interest in a conditional sale. In either case Swift Dodge incurred a loss only when the eventual sale of the vehicle did not produce sufficient funds to cover the amount owed.

Finally we examine the parties' intentions. The stated intention of both Swift Dodge and the users was to engage in lease agreements.

In spite of this, there are no essential differences between this transaction and a conditional installment sale with a lump sum final payment. Swift Dodge did not retain, in this two-party transaction, significant and genuine attributes of a lessor. We therefore are precluded from holding that the characterization given this transaction by the parties is controlling. *See generally, Frank Lyon,* 435 U.S. at 583–84, 98 S.Ct. at 1303 (similar test in three-party transaction).

REVERSED.

```
OPEN END
Lease No._____
```

Licensed by ◆ CHRYSLER
LEASING CORPORATION

## APPENDIX

# LEASE AGREEMENT

This agreement, made this...........................day of........................................................................19..........

between..................................... ..................... .......................................................................(hereinafter called "Lessor"),

and...............................................:...............................................................................................('hereinafter called "Lessee"),

address...............................................................................City...........................................State........................ Zip........................

THE PARTIES HEREBY MUTUALLY AGREE AS FOLLOWS:

**1. DESCRIPTION OF LEASED VEHICLE:** Lessor hereby leases to Lessee and Lessee hereby hires from Lessor, on the terms and conditions herein provided, that certain motor vehicle, as follows:

| YEAR | MAKE | MODEL | BODY TYPE | SERIAL NO. |
|------|------|-------|-----------|------------|
|      |      |       |           |            |

EQUIPMENT:

**2. RENTAL PAYMENT AND TERM:** Lessee agrees to accept the above vehicle at the rental rate specified. The term "vehicle" when used in this agreement shall mean motor vehicle leased hereunder by Lessee.

Lessee agrees to pay each total monthly rental in advance without deduction, setoff or counterclaim, on the dates and at the places specified. If the delivery date is other than the first or the last day of a month, the monthly rental shall be prorated for that month.

The term of this agreement with respect to the vehicle shall be as specified, and shall commence on the delivery date of such vehicle.

This agreement is one of leasing only and the Lessee shall not have or acquire any right, title, or interest in the vehicle except the right to use or operate it as provided herein.

| Monthly Rent | Insurance | Maintenance | License | Sales Tax | Total Payment |
|---|---|---|---|---|---|
| $.................. | $.................. | $.................. | $............ ........... | $............ ......... | $. .. ... ... per mo. |

| Term of Lease | Depreciation Reserve | Security Deposit | Delivery Date | Billing Date |
|---|---|---|---|---|
| ...........Months | $..................per month | $.................. | .............. ......... | ...... ............... .. |

(Line 1.)  CAPITALIZED COST. Value of Motor Vehicle  $.......................... 

(Line 2.)  Total amount of periodic payments to be credited to Lessee
in establishment of any liability at end of lease period:
(...........months x $.................... monthly Depreciation Reserve $ .... ... ...............

(Line 3.)  The total amount of periodic payments not so credited
(.............months x $.......... .........)  $. ..... ...... ...........

(Line 4.)  The maximum for which Lessee could be liable at the end of
lease period (Line 1.) minus (Line 2.) (Depreciated Value)  $..... ........... . .......

(Line 5.)  Amount, if any, for insurance, if such insurance is provided
by or procured thru Lessor  $.......... ... ...... .......

(*)Refer to Insurance Section (Provisions of The Lease) Page 4.

### IF NO CHARGE IS MADE FOR INSURANCE, NONE IS PROVIDED BY LESSOR

Rental to be paid on................day of each month to:................. .......................... .............. ..............

at:...... .................................................................................................................................California

Vehicle delivery............................................................. on .............................................................

Vehicle Return............................................................................................................. .... .................
Address                     City                     State

**3. MAINTENANCE AND REPAIRS:** Lessee shall keep and maintain each vehicle in good operating condition and working order, using as a guide the maintenance program prescribed in Owner's Manual, and shall perform all preventative maintenance required to insure full validation of the manufacturers warranty.

Lessee shall be responsible for the cost of all gasoline, oil required between changes, and all washing, polishing, towing and storage, to the extent necessary to maintain the vehicle in good condition. Lessee shall maintain proper oil, battery and cooling levels and protection against freezing of the radiator and engine.

Lessor will provide maintenance if so specified under the provisions of the lease, and except for such costs, Lessee will pay for all other maintenance not covered by the manufacturer's warranty.

**4. INSURANCE:** Insurance shall be procured for each vehicle and shall be maintained during the term of the lease as provided under the provisions of the lease, with companies satisfactory to Lessor. Prior to delivery of any vehicle, proof of insurance will be provided as required by Lessee and/or Lessor.

If Lessee provides insurance, such insurance shall be endorsed to provide that Insurer will notify Lessor immediately in the event the insurance should be materially altered or cancelled, and Lessor may (but shall not be obligated to) secure necessary insurance protection at Lessee's expense.

Lessor's charges for insurance are subject to escalation annually to reflect changes in the cost of insurance to Lessor. If such charges increase, Lessee shall have the option of providing his own insurance.

If Lessor has agreed to provide insurance, Lessor may nevertheless require that such insurance be provided by Lessee if Lessor deems the vehicle to be exposed to extraordinary risk or if Lessor's insurer cancels its policies covering such vehicle. Lessor will make an appropriate adjustment in the monthly rental charges in event Lessee is required to provide insurance.

Lessee and Lessor, their agents or employees, shall comply with all the terms and conditions of said insurance policy, including the immediate reporting of all accidents to Lessor and Insurer, and do all things necessary or proper to protect or preserve the other party's rights as a named insured in said insurance policies.

All insurance policies covering the vehicle shall be endorsed to protect as their interest may appear, Lessee, Lessor and any other person having an interest in the vehicle.

**5. TAXES, LICENSING, REGISTRATION:** The cost of all licensing, registration of the vehicle in Lessor's name and such taxes as are specified shall be paid for by Lessee, and Lessee shall pay all other taxes and/or government assessments, fees and charges imposed on or in connection with any vehicle operated pursuant to this Agreement. Lessee shall pay and bear all net income taxes on rent payable hereunder.

**6. DELIVERY AND RETURN OF VEHICLES:** Delivery and return of the vehicle shall be at Lessor's place place of business or as specified. Lessee agrees to return the vehicle at the end of the lease term or any extension thereof, or upon earlier termination of the lease, in same condition as when delivered, ordinary wear and tear excepted. Lessee and Lessor, or their agents, shall inspect the returned vehicle and provide a jointly signed report on the condition of the vehicle.

a.  **7. PREMATURE TERMINATION:** Lessee may terminate this lease with respect to this vehicle at any time after twelve (12) months from the date of delivery of the same, and prior to the end of the lease term, by giving Lessor thirty (30) days notice in writing, provided that Lessee shall bear any loss or receive any gain

which results from final disposition of the vehicle. When a vehicle is returned to Lessor upon such termination, Lessor shall promptly obtain the highest available cash offer at wholesale for the vehicle and notify Lessee in writing of the offer indicating the gain or loss pursuant to this paragraph, which would result from acceptance of such offer. Lessee will notify Lessor within (5) business days thereafter that it will accept such gain (or bear such loss as the case may be) or will otherwise arrange for the immediate sale of the vehicle in order to obtain the Termination Value thereof for the Lessor. If Lessee fails to make any election within five (5) business days of receipt of such notice, Lessor is authorized to accept such offer and credit or debit Lessee as appropriate. All payments due Lessor as a result of any termination shall be due as soon as the amount of the payment is ascertained.

b. The gain or loss on any final disposition shall be the difference between the offer received and the Capitalized Cost of the vehicle, less the monthly reserve accumulated at the time of termination aforesaid.

c. Any termination hereof shall not release Lessee from Lessee's obligation to pay all money then due hereunder to Lessor.

d. The term "Termination Value" as used herein shall mean the Capitalized Value, less the monthly Reserve accumulated at the time of termination aforesaid, plus any rental payments due, pro rata share of any license or tax which now is or which may hereafter be imposed upon Lessor or upon Lessee for the renting and use of said car hereunder, and the unamortized portion of any annual prepaid license fees and applicable taxes paid by Lessor.

e. If any vehicle is lost or stolen or so damaged that it cannot, in Lessor's judgment be economically repaired, the lease with respect to such vehicle shall terminate effective thirty (30) days from the date of notice by Lessee to Lessor of the loss, theft or damage. Lessee shall pay Lessor the Termination Value of such vehicle computed as provided in sub-paragraphs (b) (c) and (d) above, on the effective date of termination, less the proceeds from any insurance settlement paid the Lessor.

**8. USE OF VEHICLES:** Lessee shall permit only safe, careful, licensed and authorized drivers to operate the vehicles. Lessee agrees upon written complaint from Lessor, specifying any excessive collision claims or an indication of any other incompetence by or of any driver, that Lessee will immediately take such action as is necessary to correct these conditions.

Vehicles shall not be used for hire or public transportation and vehicle use shall, except with written permission of Lessor, be confined to the United States. Lessee shall not permit any vehicle to be used in violation of any federal, state or municipal statutes, laws, ordinances, rules or regulations or contrary to the provisions of any applicable insurance policy, and Lessee shall indemnify and hold Lessor harmless from any and all fines, forfeitures, damages or penalties resulting from violation of such laws, ordinances, rules or regulations.

**9. INDEMNITY:** Lessee shall defend, indemnify and hold harmless Lessor and the officers and employees of Lessor, from and against any damage, loss, theft, or destruction of any vehicle, and against all losses, liabilities, damages, injuries, claims, demands, costs and expenses of every kind and nature whether or not covered by insurance, including legal fees and disbursements, arising out of and in connection with the use, condition or operation of vehicles during the lease term.

**10. LESSEE'S DAMAGES:** Lessor shall not be responsible to Lessee, or to its agents, servants or employees, for any loss of business or other damage caused by any interruption of the service herein to be furnished by Lessor, or for the time lost in the repairing or replacing of any vehicles, nor for any loss, injury or damage arising out of or relating to Lessor's failure to deliver vehicles pursuant hereto by reason of strikes or other causes beyond control of Lessor, nor of any other losses or damages sustained by Lessee hereunder, except as specifically provided in Lessor's undertaking in this Agreement. It is expressly understood that Lessor assumes no liability or responsibility for any acts or omissions of Lessee or of Lessee' agents or employees, or for any property of Lessee, its agents or employees, or any other person's property damaged, lost or stolen in or from the vehicles.

**11. DEFAULT:** Time is of the essence of this Agreement and in the event that Lessee fails to pay in full on the date due any rental payment due hereunder, or defaults in the performance of any of the other terms, conditions and covenants contained herein, or in the event of Lessee's bankruptcy or insolvency, or if the leased vehicles be levied upon or encumbered in any way, or if at any time, in the exclusive judgment of Lessor, his rights in the leased vehicles in any way shall be prejudiced or rendered insecure, Lessor shall have the right to take immediate possession of the vehicles wherever found, with or without process of law, and to terminate the lease with the respect to such vehicles, and Lessee expressly authorizes Lessor and its agents to enter on any premises where the vehicle may be found for the purpose of repossessing such vehicles, and expressly waives any further interest in the vehicles and any right of action arising out of such entry and repossession. Lessor shall not be liable in damages for any termination pursuant to this paragraph. Lessee shall, however, upon termination pursuant to this paragraph be immediately responsible for the payment of all amounts due under the lease agreement through the date of termination, for the loss, (if any), resulting from the sale of the vehicle pursuant to the provisions of paragraph 7 hereof entitled "Premature Termination", (with the gain, if any to be applied by Lessor to the payment of amounts due under this paragraph), for liquidated damages of One Hundred Dollars to compensate Lessor for the inconvenience and expense of the default termination, and in addition to the above for any specific damages Lessor may have sustained as a result of Lessee's default including, but not limited to, out of pocket costs of repossession and reasonable attorney's fees. If Lessee fails to accept delivery of any vehicle ordered hereunder, Lessor may retain any security deposit as liquidated damages.

**12. ATTORNEY'S FEES — COSTS — WAIVER:** In the event Lessor brings any action against Lessee hereunder Lessee agrees to pay to Lessor a reasonable attorney's fee to be fixed by the Court in such action and to pay Lessor costs of suit. Lessee also agrees to pay Lessor all costs incurred, including attorney's fee, if any, in the repossession of each car leased hereunder.

No waiver of any breach of any term or condition hereof shall be construed to be a waiver of any preceding or succeeding breach of the same or any other term or condition.

**13. GENERAL AND MISCELLANEOUS:** This instrument constitutes the entire Agreement between the parties hereto and shall be binding on their heirs, executors, administrators and their legal representative, successors and assigns. Lessee authorizes Lessor to apply to the payment of any sums due Lessor hereunder as rent or otherwise, any security deposit or other sum of money belonging to Lessee, which may come into Lessor's possession. This Agreement may not be amended or altered in any manner except in writing signed by both parties. No forbearance to exercise any rights or privileges under this Agreement or waiver of any breach of any of its terms shall be construed as a waiver of any such terms, rights or privileges, but the same shall continue and remain in full force and effect the same as if no such forbearance or waiver had occurred.

Neither this Agreement nor any interest herein may be assigned by Lessee without the prior consent of Lessor thereto in writing. This lease or its interest or any rent due or to become due may, however, be assigned by Lessor without consent of Lessee, but subject to the rights of Lessee hereunder.

This Agreement shall be interpreted under and governed by the law of the State of California. If any provision hereof or the application of any provision to any person or circumstances is held invalid or unenforceable, the remainder hereof and the application of such provision to other persons or circumstances shall remain valid and enforceable.

Any notice given by one party to the other under this Agreement shall be given in writing at the address of the other party set out in, or at such other address as may have been furnished in writing for such purpose.

**14.**                 **PROVISIONS OF THE LEASE**

### LICENSE AND TAXES

| Provided by Lessor | | Provided by Lessee |
|---|---|---|
| ☐ | State License | ☐ |
| ☐ | Sales Tax | ☐ |
| ☐ | State Excise Tax | ☐ |
| ☐ | Personal Property Tax | ☐ |
| | All other Taxes | ☐ |

### INSURANCE

Provided by Lessor                                                         Provided by Lessee

☐   Fire, Theft and Comprehensive     $............................ Monthly    ☐

☐   Collision ( $.100.00.......deductable)    $............................ Monthly    ☐

☐   Public Liability   $.100.000..../...300.000   $............................ Monthly    ☐

☐   Property Damage   $....25.000.....          $............................ Monthly    ☐

     First ( $..100.00...of any collision damage)                        ☐

If insurance secured by Lessee, agent is:.................................................................Tel:............................

Date verified...........................................Time.......................Verified by.........................................................

### MAINTENANCE

| Provided by Lessor | | Provided by Lessee |
|---|---|---|
| ☐ | Mechanical Maintenance Repairs | ☐ |
| ☐ | Lubrication and Filter Changes | ☐ |
| ☐ | Oil Changes | ☐ |
| ☐ | Anti Freeze | ☐ |

It is hereby agreed that maintenance will be provided as specified above by Lessor and/or Lessee. In event Lessor provides maintenance, Lessor agrees to return to Lessee any unused portion of the accumulated maintenance reserve credit, and Lessee agrees to pay to Lessor any maintenance costs in excess of the accumulated reserve credit on termination of this Lease. MONTHLY MAINTENANCE RESERVE CREDIT $........................ Normal maintenance repairs to be performed PER MANUFACTURER'S WARRANTY.

**15. SPECIAL PROVISIONS AND DELETIONS.** Special provisions and deletions, if any, are listed below:

I acknowledge that this lease has been drawn with great consideration for anticipated values and I am fully aware there is a possibility of either a refund of rental or additional rental due at time of termination. I am further aware that used car values are determined by condition, mileage, remaining factory war-

ranty and current market value at time of termination. I estimate my annual mileage to be ......................... miles per year.

................................................................
Signature

NOTICE TO THE LESSEE: (1) DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN. (2) YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS AGREEMENT.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

..............................................................
(Lessee)

..............................................................
(Lessor)

By.........................................................

By ...........................................................

..............................................................
(Title)

..............................................................
(Title)

..............................................................
Individual