This is an action to recover $1,000, 000 as damages resulting from a breach of a contract of employment. The plaintiff in error, Elmer Gross brought an action against the Youngstown Sheet Tube Company and the other defendants, seeking to recover $1,000,000. The issues were presented by a second amended petition, an answer thereto, and a reply. At the time the contract was alleged to have *Page 286 
been entered into, Gross was a private detective residing at Gibsonia, Pa., near Pittsburgh. The Youngstown Sheet Tube Company was an Ohio corporation, located at Youngstown, and engaged in the manufacture and sale of metal products. The other defendants were officers of the steel company. The initial contract between the parties consisted of a letter written by the steel company upon August 11, 1922, to Gross, and by Gross accepted as an accurate statement of their contractual relations. The term of this contract expired, as therein provided, December 1, 1922. Gross alleged that at that time he and the steel company agreed orally that the time of the contract should be extended so as to afford Gross an opportunity to further extend his investigations with respect to the subject-matter of the contract. Gross averred that, by this oral agreement of extension of time, the steel company agreed that, if Gross would go forward with further investigations, and was successful in procuring the evidence which the steel company desired with respect to the manner in which, and the extent to which, the steel company had been defrauded by its own employees and others, then and in that event the Steel company would institute whatever actions in court, whether civil or criminal, which Gross deemed necessary to accomplish a recovery of property, or money in lieu thereof, which the investigation indicated the steel company was entitled to recover from those who had defrauded the company, and that the steel company would reimburse Gross for his time and expenses, and would give him one-half of the amount recovered from the wrongdoers.
Gross alleged that, pursuant to the original written *Page 287 
contract of August 11, 1922, as supplemented by the oral agreement of December 1, 1922, he went forward with his investigations, and that he was successful in securing all of the evidence asked for by the steel company, and that this relation of the parties continued up to the 2d day of June, 1923, at which time the steel company informed Gross that the company had all the evidence that it needed in order to make the contemplated recoveries, and wrote Gross a letter inclosing therein a check to his order for $10,000 to cover all claims that he might have against the company up to that time. Gross alleged that he declined to accept the check in full of all demands as stated in the letter of June 2, 1922, and that thereupon, and for the purpose of inducing him to accept the check, the steel company agreed orally that he should still hold his interest in any recoveries that the steel company might thereafter make of the wrongdoers, and that his interest of 50 per cent. in such recoveries should be paid to him when made, in addition to the $10,000, and that the steel company would very soon begin all the actions, criminal and civil as well, which were necessary to make full recoveries as justified by the evidence Gross had produced, to which interpretation and modification Gross assented, and thereupon accepted and cashed the check for $10,000, which amount he has since retained.
Gross then alleged that the steel company had wrongfully and fraudulently failed and refused to bring any action to recover property, or damages in lieu thereof, from the wrongdoers, to his damage in the sum of $1,000,000, for which he prayed judgment.
The steel company, by its answer denied generally *Page 288 
all wrongful acts charged against the company by Gross, and also specifically denied most of the statements made in the second amended petition. The steel company admitted that it had written the letter of August 11, 1922, and also the letter of June 2, 1923, and had sent to Gross the check therein referred to, for $10,000, which was cashed by Gross. The steel company averred that the contract of August 11, 1922, was null and void, for the reason that it contravened public policy. The steel company denied that it had made the oral modifications of the original contract on December 1, 1922, and June 2, 1923, as alleged by Gross. The steel company averred that, if the contract had been modified in the manner and to the extent as claimed by Gross, it would have been more violative of public policy than it was without such modification. The steel company also averred that there had been a full and complete accord and satisfaction effected between the parties by the delivery and acceptance of the check for $10,000 sent by the steel company to Gross.
The relations of the parties, as set forth in the letters of August 11, 1922, and of June 2, 1923, are best shown by those letters themselves, which read as follows:
"The Youngstown Sheet Tube Company.
"J.A. Campbell, President.
Youngstown, Ohio, August 11, 1922.
"Gross-Capone National Detective Agency, Keystone Building, 324 Fourth Avenue, Pittsburgh, Pa. — Gentlemen: Referring to your letter of June 15th, directed to Mr. Meub, and confirming your conversation with me a few days since, you may proceed to investigate for us the matter of our having been defrauded *Page 289 
frauded in material at our plant upon the understanding that you are to receive, as your full compensation, fifty per cent. (50%) of all amounts recovered and actually received by us as the direct result of your investigations and evidence secured thereby.
"No investigation shall be made of our records or of employees at our plant, except with the full understanding and approval, in advance, of our general superintendent, W.C. Reilly.
"We are to receive full information of all your investigations and findings, and all records, documents and evidential matter, of every character received by you are to be returned to us. No proceedings, civil or criminal, shall be commenced except with the approval of our counsel, and all proceedings, if commenced, shall be under the sole direction of our counsel.
"We will co-operate with you in every reasonable and proper way in furthering your investigation.
"This arrangement shall expire on December 1st, 1922, but may be terminated at any time prior to such date by our giving you written notice to such effect.
"If so terminated by us without any compensation having been earned by you hereunder, as above provided, we will pay you, in lieu thereof, and as your full compensation hereunder, a reasonable amount for time and expense actually spent by you on this work.
"Very truly yours,
"[Signed] J.A. Campbell, President." *Page 290 
"The Youngstown Sheet Tube Company.
"Youngstown, Ohio, June 2, 1923.
"Walter E. Meub, Secretary.
"Mr. E.W. Gross, 324 Fourth Ave., Pittsburgh, Pa. — Dear Sir: Confirming our conversation of yesterday and this morning, I am handing you herewith check of the Youngstown Sheet Tube Company in the sum of $10,000 in full payment and settlement for all your services rendered the company to date, and in full of all your claims of every character.
"It is understood, however, that if the Youngstown Sheet 
Tube Company should secure a recovery, by settlement or otherwise, from the other company or any of its stockholders whose affairs you have been investigating, we will pay you such further compensation, taking into account the amount of the recovery, as may then seem just and proper.
"It is further understood that your employment is now terminated and you are not to perform any further services for us unless we call upon you to do so, in writing.
"Very truly yours,
"The Youngstown Sheet Tube Company,
"[Signed] By W.E. Meub, Secretary."
At the opening of the trial, counsel for Gross stated his case to the jury, and outlined the evidence by which he expected to sustain the issues stated. This statement embraced the facts above narrated, and included the copies of the letters of August 11, 1922, and June 2, 1923. While making this statement to the jury, counsel for Gross, answering an inquiry made by counsel for the defendants, admitted that no recoveries in any amount had *Page 291 
been made from any of the wrongdoers, but did make the statement to the jury that, if the steel company had instituted the actions suggested by Gross, the steel company could and would have secured recoveries amounting in the aggregate to not less than $2,000,000, and that therefore Gross was entitled to recover as damages in this action $1,000,000 in addition to the amount of the $10,000 check.
Counsel for the steel company at the close of the statement of the case to the jury by counsel for Gross, moved the court to withdraw the case from the consideration of the jury and direct a verdict in favor of the defendants, for the reason that the contract which formed the basis of the action was contrary to public policy, and for the further reason that there had been a full and complete accord and satisfaction accomplished by the payment of the $10,000 to Gross. The court of common pleas granted the motion on both grounds, and judgment was entered accordingly. The steel company further moved the court to decree a cancellation of the alleged contract as prayed for in the cross-petition of the defendant, and this motion was granted. The judgment entered in the court of common pleas was affirmed by the Court of Appeals. The Court of Appeals held, however, that the original contract of August 11, 1922, was not at variance with public policy, and also held that the delivery of the check for $10,000, with the letter which accompanied it, when taken in connection with the oral agreement then claimed to have been made between the steel company and Gross, did not amount to an accord and satisfaction.
There are only two questions in the case: First, *Page 292 
did the contract between the parties contravene pub lie policy? And, second, was an accord and satisfaction effected?
The authorities are nearly all in accord that, where the contract is that the agent shall procure evidence of a definite character or such evidence as will produce a definite result, and the agent is himself a stranger to the transaction, with no interest therein except that his compensation is to be a given percentage of the amount recovered, then and in that event the contract does contravene public policy is null and void, and cannot be enforced.
It should be kept in mind that the cause of action in this case, if any existed in favor of the steel company and against the wrongdoers, was not a cause of action sounding in contract, nor was it based or a tort in the form of negligent conduct. The subject-matter of this litigation was larceny, and grand larceny at that, to say the least. There was no element of mistake or negligence in any of the transactions. They were characterized by counsel for Gross in his statement to the jury as thefts of the property belonging to the steel company, and they could not be less than that. Furthermore, it was claimed, and is still claimed, that the aggregate of these larcenies would amount to more than $2,000,000 so that at least $1,000,000 would, by virtue of these contracts, if valid, come to Gross.
In view of the very definite terms of the letter of August 11, 1922, with respect to the reservations by the steel company of the full and complete power and authority at all times to say whether or not any prosecutions should be instituted, and, if instituted how they should be carried on, and when they should *Page 293 
be terminated, and in view of the fact that that contract expired by its terms on December 1, 1922, it became necessary to base the right of recovery by Gross from the steel company largely upon the extension of the terms of that contract and a modification of its terms as well, which Gross averred had been accomplished by the oral undertakings of the parties on December 1, 1922, and June 2, 1923, by which the steel company waived its right to alone determine whether actions should be commenced, and, if commenced, under what conditions they should be prosecuted, and obligated the company definitely to pursue in these matters the course outlined by Gross. As was well said by the Court of Appeals in its opinion, this brought into the contractual relations of the parties elements clearly inimical to public policy and destructive of the right of recovery.
The contract is at variance with public policy, for the reason, among others, that it places the great temptation that it does on the part of the agent to procure false testimony, or any kind of testimony that he thinks will assist in earning the $1,000,000 that he was to receive, if the litigation was successful.
We can see but one contract between the parties; that is, the contract represented by the letter of August 11, 1922. That letter surely called for evidence establishing the fact that these grand larcenies had been committed, and the evidence would be of no avail, except it were sufficient to produce a judgment of guilt against the wrongdoers. Throughout the second amended petition, and throughout the statement of counsel of the case to the jury, the *Page 294 
single idea prevails at all angles, and that is, that Gross conceived himself authorized to dictate the action of the steel company upon the evidence that he should produce, and hence it is said, not only in the second amended petition, but in the statement of the case to the jury, that the company wrongfully and wilfully, and in fraud of the rights of Gross, declined to bring any action against the wrongdoers for the recovery either of property taken or for money in lieu of property taken.
This case is in no sense analogous to an action brought by a lawyer for his client with the lawyer's fee contingent upon, and measured by, the successful outcome of the litigation.
There have been many decisions with respect to contracts that contravene public policy. No two contracts are the same, and we think it would serve no useful purpose to again review the decisions that have been written on this subject. We have no hesitancy in reaching the conclusion that the contract in this case is clearly violative of public policy, and also that there was a definite and complete accord and satisfaction effected by the parties themselves on June 2, 1923.
The judgment of the lower courts will be affirmed.
Judgment affirmed.
MARSHALL, C.J., DAY, ALLEN, ROBINSON, JONES and MATTHIAS, JJ., concur. *Page 295