JACKSON *v.* BRYANT.

(Decided October 17, 1929.)

*Mr. C. E. Hunter,* for plaintiff in error.

*Messrs. Hart & Drukenbrod,* for defendant in error.

SHERICK, J. This cause originated in the municipal court of Canton, and upon trial therein, a jury being waived, judgment was rendered in favor of the plaintiff, Charles Jackson, the plaintiff in error herein, from which judgment the defendant, who is defendant in error before this court, prosecuted error to the court of common pleas, which court reversed the judgment rendered below. Error is now prosecuted to this court by the original plaintiff, and throughout the course of this opinion the parties will be referred to as they stood in the court of first instance.

An examination of the pleadings and the evidence discloses that some time prior to the 30th day of October, 1928, the defendant possessed an automobile upon which the Colonial Finance Company held a mortgage. The company held the bill of sale. The plaintiff desired to purchase defendant mortgagor's car and to assume the mortgage held by the finance company. In pursuance therewith, both parties proceeded to the company's office, made their desires known, and asked its consent and approval to the sale and transfer. This the company refused for the reason that the plaintiff was not an acceptable credit risk.

It is further disclosed that the parties with full knowledge of the finance company's disapproval of the entire transaction, and knowing their own pro-

posed acts to be wrongful, proceeded to and did on the 30th day of October, 1928, enter into a written contract, whereby the defendant, in consideration of a down payment of $100 and the assumption of all future payments due on the mortgage contract held by the finance company and the taking out of a policy indemnity insurance for the protection of the defendant, agreed to sell the plaintiff the automobile, possession thereof to be given immediately, all of which was done accordingly. The defendant was to furnish plaintiff a bill of sale when the finance company was paid in full.

This agreement had a verbal supplement that the defendant should continue to make the payments to the finance company, which payments the plaintiff was to procure. This was to be done in order that the finance company should not discover their turpitude.

The plaintiff had possession of the car for a month or more, operated it on the defendant's license, and caused the defendant to make one payment to the company, but failed to furnish the money for the second payment. The company then learned of the deception practiced upon it and under the terms of its mortgage it repossessed the car from the plaintiff.

During plaintiff's time of possession he repaired the car, placed thereon some accessories, insured the defendant as provided in the contract, joined the automobile club; and for these items, plus the down payment and the additional sum of $200 for inconvenience and humiliation in being deprived of the use of the car, all in the sum of $501.60, the plaintiff sues.

The defendant answers, admitting the contract, and avers the plaintiff's knowledge of the whole transaction, that the car could not be legally sold and possession given without the consent of the chattel mortgagee, and that the agreement was illegal and against public policy, being in violation of Section 12476-1 of the General Code.

The questions therefore presented to this court are: Does this contract have a legal object; is it contra to expressed law; is it fraudulent, or against public policy, and therefore illegal and unenforceable?

It is clear from a reading of Section 12476-1 of the Code that the intent of the Legislature was to protect a chattel mortgagee in his rights and security under his mortgage. The statute in part provides: "Whoever, being a mortgagor of personal property, or being in possession thereof knowing it to be so mortgaged * * * sells it * * * within the state, without the consent of the owner of the claim secured by the mortgage, with intent to defraud the owner thereof, * * * shall be imprisoned * * * fined * * * or both."

We recognize as a proposition of sound law the statement adopted by our Supreme Court in the case of *Commercial Credit Co.* v. *Schreyer,* 120 Ohio St., 568, 581, 166 N. E., 808, 812, quoting from *Harris* v. *Runnels,* 53 U. S. (12 How.), 79, 13 L. Ed., 901: "Where a statute prohibits an act or annexes a penalty to its commission, it is true that the act is made unlawful, but it does not follow that the unlawfulness of the act was meant by the legislature to avoid a contract made in contravention of it."

But it also follows that the unlawfulness of some

acts, for example a contract to stifle competition, was intended to avoid a contract made in contravention thereof. Or, again, the Legislature may make an illegal and unenforceable contract actionable at law, such as money lost under a gambling contract.

The peculiar facts and circumstances of this case, considered in connection with the expressed provision of positive law as found in Section 12476-1, General Code, constrain us to the view that there is another class of cases involving the validity of a contract made in direct contravention of a penal statute, and that class covers cases where two parties conspire to defraud a third person.

All authorities agree that the object of a contract must be legal; that is, the act to be done or thing to be accomplished must not nullify a positive provision of expressed law. And an agreement which has for its object and purpose the invasion of the civil rights of a third person, and contemplates a trespass upon or conversion of the personal property of another, is illegal and unenforceable.

We recognize that the intent of parties in many instances is not susceptible of ascertainment. But in the case at bar it requires no speculation to determine, but is apparent and certain, that the plaintiff and defendant in consummating their agreement and concealing the same from the finance company, after its unequivocal refusal to accept the plaintiff as a credit risk, intended to violate the plain provision of the statute in question and to defraud the finance company, a third person, out of its security, and to impair the obligation of the contract existing between the defendant and the company. In law, every party is presumed responsible for the natural

intendment of his deliberate acts. Fraud is a civil wrong, and consequently an agreement, the object of which is to defraud a particular third person, and which cannot be performed without so doing, is illegal and unenforceable. The case of *Randall* v. *Howard,* 67 U. S. (2 Black), 585, 588, 17 L. Ed., 269, although a case in equity, is in point, as equity follows the law. The court there remarks: "It is against the policy of the law to enable either party, in controversies between themselves, to enforce an agreement in fraud of the law, or which was made to injure another."

The Supreme Court of Vermont, in an action of assumpsit, *McEwen* v. *B. P. Shannon & Co.,* 64 Vt., 583, 25 A., 661, affirms the rule that "the courts will treat such secret agreement as illegal, and will leave the parties, with reference thereto, where they have placed themselves."

Our Supreme Court, in *Cumpston* v. *Lambert,* 18 Ohio, 81, 51 Am. Dec., 442, applied the same rule where the illegal object of the agreement was the commission of a tort against the person of another. The principle was later recognized in *Crawford & Murray* v. *Wick,* 18 Ohio St., 190, 205, 98 Am. Dec., 103, and in *State, ex rel.,* v. *Cincinnati Gas Co.,* 18 Ohio St., 262, 292, and applied in the "*Bohemian Oats*" cases, *Shirey* v. *Ulsh,* 2 C. C., 401, 1 C. D., 554; *Cowell* v. *Harris,* 2 C. C., 404, 1 C. D., 556; *Carter* v. *Lillie,* 3 C. C., 364, 2 C. D., 204. The principle is well stated and many other authorities cited in 2 Elliott on Contracts, Sections 645 to 658, inclusive.

The maxim, "*Ex turpi causa, non oritur actio,*" has direct application to the parties herein and the situation in which we find them. In *Hooker*

v. *DePalos,* 28 Ohio St., 251, 261, the court announces that it rests 'on the clearest principles of public policy, and never to be ignored, * * * nothing is better settled than that, in regard to contracts which are entered into for fraudulent or illegal purposes, the law will aid neither party to enforce them whilst they remain *executory,* either in whole or in part, nor, when *executed,* will it aid either party to place himself in *statu quo* by a rescission, but will, in both cases, leave the parties where it finds them.''

Finding the parties to be *"in pari delicto,"* we leave them where found. The judgment of the common pleas court will therefore be affirmed, and this court, coming now to enter the judgment that the municipal court should have entered, dismisses the petition of the plaintiff and renders judgment against the plaintiff, Jackson, for the costs.

*Petition dismissed.*

LEMERT, P. J., and HOUCK, J., concur.