**In the Matter of Dewie SLOAN, Bankrupt.**

**No. B 67–312.**

United States District Court
N. D. Ohio, E. D.

May 27, 1968.

Marvin A. Sicherman, Cleveland, Ohio, for trustee.

Albert Gilman, Cleveland, Ohio, for petitioner-respondent.

### MEMORANDUM

GREEN, District Judge.

This is a petition for review from an order of the Referee in Bankruptcy finding that the Trustee herein was entitled to receive the proceeds from the sale of an automobile which had been purchased by the bankrupt. As of the date of bankruptcy the Ohio certificate of title for the said vehicle showed title in the name of Dewie Sloan with a lien on the vehicle in favor of the Universal Finance Company, petitioner-respondent herein.

The salient facts are simple and uncontested, and this review presents essentially a question of law.

On or about December 13, 1966 the bankrupt purchased a 1966 Ford automobile from Commerce Ford, Inc. As a part of that transaction he traded in a 1965 Ford, on which a prior loan balance of $2,143.64 was owing to a party not identified on this record. The trade-in allowance made by Commerce Ford for the 1965 Ford was $1,600.00, being $543.64 less than the amount the bankrupt owed on the said vehicle.

The retail installment contract which the bankrupt signed showed a "Total Cash Selling Price" for the 1966 Ford of $2,262.24. The contract reflected the fact that no cash down payment was made. Under item 4 of the contract, wherein any trade-in was to be shown, the figure "(–543.64)" appeared. The "Unpaid Balance of Cash Price" was shown as $2,805.88, to which was added $753.80 for "Insurance Premiums and Finance Charge" for a "Total Time Balance (Amount of Note)" of $3,559.68. The contract was payable in 36 consecutive monthly installments of $98.88 each, beginning on the 28th day of January, 1967. On the same date that the instrument was executed in favor of Commerce Ford, Inc., the retail seller, it was assigned to the Universal Finance Co., petitioner-respondent herein.

On January 17, 1967, before any payments were made on the contract, Mr. Sloan was adjudicated a bankrupt upon his voluntary petition in bankruptcy. Thereafter the 1966 Ford was seized by the finance company.

The Trustee in Bankruptcy was appointed and qualified on February 14, 1967. On February 28, 1967 the Trustee filed an application for turnover order against the respondent finance company, alleging that it had no right to possession of the car. It was the Trustee's contention that the retail sales agreement signed by the bankrupt was in violation of the Ohio law and that the alleged lien

in favor of the finance company was void.

Pursuant to a stipulation of counsel the car was sold, producing a fund of $1,900.00. It was agreed that the proceeds of sale would be paid to the party prevailing in the turnover proceedings.

The crux of this matter is the inclusion of the $543.64 item in the retail installment contract. That charge has been referred to by the parties in their briefs, and by the Referee in his findings, as a "negative equity." It was the Referee's conclusion that the inclusion of the "negative equity" in the retail installment contract resulted in the invalidation of the note and mortgage under Sections 1317.04, 1317.06, 1317.07 and 1317.08 of the Ohio Revised Code, all of the foregoing being provisions of the Ohio Retail Installment Sales Act.

The issue stated to be before this Court by the Trustee is "Can a vendor under a Retail Installment Sale include in the Time Balance the re-financing of a negative equity?" This statement of the issue was adopted by the Referee.

The respondent finance company contends that the issue is "If charges greater than those provided for in sections 1317.-01 to 1317.11, inclusive, of the Ohio Revised Code, are made but not received by the retail seller, his agent, assignee or successor in interest, does that void the entire obligation of the purchaser and consequently the lien noted on the certificate of title to the automobile?"

The Court believes that neither of the foregoing accurately reflects the question of law presented in this case. In the Court's opinion the issue should be stated in two parts as follows:

1) May a retail seller include as a charge under a retail installment contract the extension of credit, or a loan of money, to the retail purchaser for an amount in addition to the cash price of the specific goods which are the subject of the contract without violating sections 1317.04, 1317.06 and 1317.07 of the Ohio Revised Code?

2) If such a transaction is violative of the foregoing code provisions, does section 1317.08 of the Ohio Revised Code permit the retail buyer to avoid the obligation evidenced by the contract and any security agreement executed in conjunction therewith and also retain possession of the specific goods purchased thereunder?

Section 1317.04 of the Revised Code, in pertinent part, provides that:

The written instrument evidencing a retail installment sale and required by section 1317.02 of the Revised Code shall recite the following:

(A) The cash price of the specific goods.

(B) The amount in cash of the retail buyers' down payment, if any, whether made in money or goods or partly in money or partly in goods.

(C) The unpaid balance of the cash price payable by the retail buyer to the retail seller which is the difference between divisions (A) and (B).

Section 1317.07 of the Revised Code in pertinent part provides that:

No retail installment contract authorized by section 1317.03 of the Revised Code which is executed in connection with any retail installment sale shall evidence any indebtedness in excess of the time balance fixed in the written instrument in compliance with section 1317.04 of the Revised Code * * *.

Section 1317.06 of the Revised Code which governs the subject of finance charges, rates and service charges makes no allowance for the inclusion in a retail installment contract of charges other than financing charges attributable to the retail purchase itself.

It thus appears that the controlling provisions of the Retail Installment Sales Act do not on their face contemplate or permit the inclusion of a charge for financing a "negative equity" within a retail installment sales contract.

The Trustee contends, and the Referee so found, that the inclusion of the "nega-

tive equity" within the retail install-ment contract produced an excessive fi-nancing cost to the purchaser. While this may be relevant, the Court does not consider it to be the controlling factor. The plain fact of the matter is that when the retail seller included the "negative equity" within the retail installment sales contract it was engaging in the small loan business. The substance of the transac-tion was that the retail seller, in addition to extending credit for the purchase of specific goods, lent the retail buyer money to pay off the lien on the trade-in car in an amount in excess of the trade-in allow-ance.

This is not the same circumstance as that presented when the trade-in allow-ance is equal to or greater than a lien on the trade-in car. In the eyes of the law a transaction of that nature is con-sidered as the purchase by the retail seller of the trade-in car, although the retail seller assures itself that the money paid by it is used to clear the lien on the trade-in car so that the title conveyed to it is free from encumbrances. Such a transaction does not result in an addition to the cash selling price of the specific goods, upon which amount the retail sell-er charges financing and/or service charges under the Retail Installment Sales Act.

It has been suggested that the trans-action herein could have been shown on the retail installment sales contract as a cash selling price of $2,805.88, reflecting the $2,262.24 sales price of the 1966 Ford plus the $543.64 "negative equity." Petitioner contends that this procedure would satisfy the formal requirements of section 1317.04, and that to hold the con-tract as written violative of the law is to honor form over substance.

There is a split of authority in other jurisdictions having Retail Installment Sales Acts as to the legality of adding a time price differential to the cash selling price of goods sold under a retail installment contract. It would appear that under the Ohio law such a procedure would be considered as creating a finance

charge, O.R.C. § 1317.01(N), and thus, in practical effect, would be the equiva-lent of the contract under consideration. Assuming that such a procedure would be permissible under the Ohio statutes, which is highly questionable in light of the statutory language, the Court has serious doubt that a "negative equity" could be considered as a time price dif-ferential. The Court does not believe, however, that such issue is presented on this record and the transaction must be judged as it appears from the retail installment sales contract.

From the briefs of counsel and from the Court's research it appears that the Ohio Retail Installment Sales Act has been the subject of interpretation by the Ohio courts on only one occasion, Teegardin v. Foley, 166 Ohio St. 449, 462, 143 N.E.2d 824 (1957). The issues litigated therein are so far removed from those of this action that the decision affords little assistance as direct prece-dent. There is, however, a statement by the Ohio Supreme Court which this Court considers pertinent to this case:

> The General Assembly, however, in en-acting legislation requiring retail auto-mobile dealers and financial institu-tions to be licensed under separate laws and answerable to separate state agencies, has, without being arbitrary, clearly considered each of said busi-nesses as being in a separate class for certain purposes. Id., p. 464, 143 N.E. 2d p. 834.

Throughout the course of the opinion in Teegardin v. Foley it is implicit that the Ohio Supreme Court viewed the Retail Installment Sales Act as a valid legisla-tive determination that retail sellers could only engage in financing under the express provisions of the said Act and could not function in areas governed by other statutes.

The subject of the contracting for and making of small loans is controlled by Chapter 1321 of the Ohio Revised Code.

It is this Court's conclusion that the retail installment sales contract under consideration herein, which included as a

charge the "negative equity" and thereby resulted in the retail seller's making of a small loan to the retail buyer, was violative of the terms of sections 1317.04, 1317.06 and 1317.07 of the Ohio Revised Code.

This finding leads to consideration of the second of the issues herein, the creditor's rights under the said contract.

Section 1317.08 of the Ohio Revised Code in pertinent part provides that:

No retail installment contract which evidences an indebtedness greater than that allowed by section 1317.06 or 1317.07 of the Revised Code and no retail installment contract in connection with which any charge prohibited by sections 1317.01 to 1317.11, inclusive, of the Revised Code, has been contracted for or received shall be enforceable against any retail buyer * * * and no security interest created by any such retail installment contract which is greater than that allowed by sections 1317.06 and 1317.-07 of the Revised Code, or in connection with which any charge prohibited by sections 1317.01 to 1317.11, inclusive, of the Revised Code, has been contracted for or received shall be enforceable against any retail buyer * * *.

If charges greater in amount than those provided for in sections 1317.01 to 1317.11, inclusive, of the Revised Code, are received by the retail seller, his agent, assignee, or successor in interest, the retail buyer, his assignee, or successor in interest may recover the total amount paid to the retail seller, his agent, assignee, or successor in interest from the retail seller or the holder of the retail installment contract.

Petitioner has contended that section 1317.08 cannot be considered applicable to this transaction for the reason that no money was paid under the retail installment sales contract. It is petitioner's theory that "Sections 1317.01 to 1317.11 are penal sections and limit the benefit to the retail buyer or his successor in interest, to the recovery from the holder of the retail installment contract, the total amount paid, and provides stiff penalty to the violator of the provisions of these sections."

That argument cannot be sustained in light of the specific language of the statute itself. Although section 1317.08 does in part create the remedy ascribed to it by petitioner, such interpretation totally disregards other relevant portions thereof. Section 1317.08 plainly states that if any prohibited charge "has been contracted for or received" under a retail installment sales contract the contract and any security interest existing thereunder are unenforceable. The statute thus states without ambiguity that the mere contracting for the receipt of a prohibited charge brings the retail installment sales contract within the restrictions of section 1317.08, and that actual payment of all or a portion of the debt is not required.

■ Having concluded that the instant retail installment sales contract reflected the making of a small loan, a charge prohibited by sections 1317.04 and 1317.07, the Court must find that the contract is within the reach of section 1317.08 although no payments were made thereunder.

This leaves for decision the interpretation to be given to the statutory language that the contract and security interest shall not be enforceable against the retail buyer.

The Court has noted that Ohio courts have in cases involving other circumstances spoken of void contracts as contracts which cannot be enforced, particularly where the contracts were in violation of a statute. Gross v. Campbell, 118 Ohio St. 285, 292, 160 N.E. 852 (1928); Hackett v. Hackett, Ohio Com.Pl., 146 N.E.2d 477, 4 Ohio O.2d 245, 246 (C.P. 1957), aff'd Ohio App., 150 N.E.2d 431, 78 Ohio Law Abst. 485 (1958), appeal dism. 168 Ohio St. 373, 154 N.E.2d 820 (1958); Jackson v. Bryant, 33 Ohio App. 468, 472, 169 N.E. 825 (1929); McGill v. Carlos, Ohio Com.Pl., 81 N.E.2d 726,

39 Ohio O. 502 (C.P. 1947). It is stated that, as a general rule, a contract which violates a statute is unlawful and void, and will not be enforced. 11 O.Jur.2d, Contracts, § 93. It would thus appear that the Ohio authorities generally have not observed any clearly defined distinction in characterizing as "void" or "as not being capable of enforcement" contracts which violate the Ohio statutory law.

■ In this regard, the law of Ohio is stated to reflect the view that the term void should be interpreted in its strictest sense when it is used in a statute for public purposes or to protect those who are incapable of protecting themselves, 50 O.Jur.2d, Statutes, § 210. Applying this same philosophy to section 1317.08, this Court should construe the language of the statute that the contract and security interest shall not be enforceable so as to afford the broadest protection to the public, for there is little doubt that the Retail Installment Sales Act is one having a public purpose designed for the consumer's protection.

■ Petitioner contends that to give section 1317.08 a literal interpretation will result in a windfall to the Trustee, standing in the shoes of the bankrupt, as a consequence of an act intended for the benefit of the retail buyer. The logic of this contention cannot be disputed. However, it is equally clear that the legislature has the right to declare that a retail seller shall not engage in the small loan business unless he is legally qualified to do so, and to impose sanctions upon those who do so. The question which this Court has had to resolve is whether the Ohio legislature intended to impose upon those who disobey its statutory directive a result as harsh as that exemplified by the decision here under review.

As this is a question of first impression the Court surveyed the Retail Installment Sales Acts of other jurisdictions to determine what interpretation had been given to laws of similar import.

In so doing the Court determined that approximately forty other states have similar legislation, some relating to retail sales generally while others are specifically directed to automobile sales. Of the states reviewed, however, only the California law contains any provision resembling section 1317.08 of the Ohio Code. It further appears that Ohio was one of the first states to adopt such regulatory legislation, having been preceded by Connecticut, Indiana, Maryland, Michigan, Pennsylvania and Wisconsin.

The basic distinction between section 1317.08 of the Ohio Revised Code and the laws of other states, excepting California, is in the remedy provided. In other jurisdictions, the laws deny the retail seller any financing or interest charges under an installment sales contract containing prohibited charges, but permit the seller to collect the principal amount of the contract. A few jurisdictions grant an additional remedy for damages in favor of the retail buyer in terms of multiples of any prohibited charges contracted for or collected. The difference between such statutes and the Ohio enactment is obvious.

Although sections 1812.7 and 1812.10 of the California Civil Code, being parts of the Retail Installment Sales Act, are representative of the type of legislation just discussed, the California Automobile Sales Finance Act, Sec. 2981 et seq. of the Civil Code, is to a degree correlative with the Ohio law. Section 2983 thereof provides that as a result of violation of certain provisions of the Automobile Sales Finance Act "the conditional sale contract shall not be enforceable." That provision has been interpreted by the California courts as creating the right of rescission in the retail buyer, but the courts have further held that the buyer could not avoid the contract and at the same time assert a possessory right in the conditionally sold vehicle, General Motors Acceptance Corp. v. Kyle, 54 Cal. 2d 101, 4 Cal.Rptr. 496, 351 P.2d 768 (1960); City Lincoln-Mercury Co. v.

Lindsey, 52 Cal.2d 267, 339 P.2d 851, 73 A.L.R.2d 1420 (1959); Lewis v. Muntz Car Co., 50 Cal.2d 681, 328 P.2d 968 (1958). If that construction were to be applied to the Ohio statute it would follow that the Referee's decision is in error. There is, however, a material difference between section 2983 of the California Code and section 1317.08 of the Ohio Revised Code. Whereas the California law declares that the conditional sales contract *alone* shall not be enforced, the Ohio law declares that both the retail installment sales contract *and* the security interest shall not be enforced.

■ As has been noted, Ohio was among the first of the states to adopt regulatory legislation of this type. In each of the other jurisdictions the statutory provisions were clear that in the case of an installment contract in violation of law the retail seller was entitled to collect the principal amount of the debt, but was barred from collecting or retaining any amount in excess thereof. General Statutes of Connecticut § 42–99; Burns' Indiana Statute Ann. § 58–908; Maryland Code Ann., Art. 83, § 149; Michigan Comp.Laws § 566.302; Purdon's Penn.Stat.Ann. § 69–631; Wisconsin Statutes § 218.01. In attempting to determine the intent of the Ohio legislature, the Court has taken into consideration the fact that the Ohio act, on its face, represents a drastic departure from the laws which preceded it. It must be assumed that the Ohio legislature was aware of the existence of these regulatory acts in other jurisdictions and in declining to adopt either their language or philosophy was evidencing an intent to create remedies for the Ohio consumers different from those represented by such legislation.

The Court considers relevant to this question of the interpretation of section 1317.08 the law of Ohio on a related subject, the Ohio Small Loans Act, O.R.C. § 1321.01 et seq. Section 1321.13 of the Ohio Revised Code in pertinent part provides that:

If any amount in excess of the charges permitted by sections 1321.01 to 1321.-19, inclusive, of the Revised Code, is charged, contracted for, or received except as the result of an accidental, or bona fide error, the contract of loan is void and the licensee has no right to collect or receive or retain any principal, interest or charges.

This provision is derived from section 8624–62 of the Ohio General Code, which differed in some of its language from section 1321.13. The General Code provision stated that in the event that excess charges "were charged or received, the contract and all papers in connection therewith shall be void." Section 8624–62 was preceded by section 6346–5a of the General Code which provided that if excess charges "were charged, contracted for or received" the contract and all papers in connection therewith would be void. The earliest form of this statute which the Court has found was known as the Haas Bill, P & A § 6346–5, and its provisions were similar to that of O.R.C. § 1321.13. The Haas Bill provided that "any loan shall be void which provides for or contemplates" charges in excess of those provided therein. Although the Haas Bill did not specifically state that a chattel mortgage securing a loan in excess of the statutory limits would also be void, it was construed as producing that result. Cleveland Collateral Loan Co. v. Bell, 17 Ohio N.P.,N.S., 385 (1915). That same conclusion was reached by the courts interpreting the later General Code Provisions which referred to "the contract and all papers in connection therewith." Capital Loan & Savings v. Biery, 134 Ohio St. 333, 16 N.E.2d 450 (1938); Columbus Postal Employees Credit Union v. Mitchell, 62 Ohio App. 343, 23 N.E.2d 989 (1939); Porter v. Interstate Securities Co., Ohio Com.Pl., 79 N.E.2d 155, 37 Ohio O. 194, 195 (C.P.1948).

It thus appears that in construing the regulatory provisions of legislation pertaining to small loans the Ohio courts have consistently held void both the note and mortgage when the loan transaction

was in violation of law. Considering the parallel nature of legislation such as the Small Loans Act and Retail Installment Sales Act the logical assumption is that legislative control over both areas would be exercised in a like manner. This assumption is strengthened by the fact that the language of section 1317.08 on its face accords with the consistent judicial construction of the varying terms of the Small Loans Act.

There appears to be a common bond between the holding in Cleveland Collateral Loan Co. v. Bell, supra, and Teegardin v. Foley, 166 Ohio St. 449, 143 N.E.2d 824 (1957) with regard to the question of legislative intent. In the Cleveland Collateral Loan Co. decision the court observed:

> Is not the contention of the defendant that the legislative intent was to render the note and mortgage void strengthened by the fact that the act, without any equivocation, makes any violation of the law a misdemeanor punishable with the foregoing fine. Id., 17 Ohio N.P.,N.S., p. 392.

In Teegardin v. Foley the Supreme Court noted that willful violations of the Retail Installment Sales Act are a misdemeanor, and further stated that:

> Section 1317.08, Revised Code, is but a part of Chapter 1317, Revised Code, entitled "Retail Installment Sales." This chapter contains, in addition to the restriction in question, numerous restrictions, limitations, positive directives *and quite severe penalties for a breach thereof (the voiding of agreements made in contravention thereof and a fine of up to one thousand dollars or imprisonment for one year, or both, are penalties included,* and, as we have seen, the possibility of the suspension of the [automobile dealer's] license of a violator). Id. p. 464, 143 N.E.2d p. 827. (Emphasis added.)

This Court believes that there is an inherent unity of point of view contained in these judicial opinions even though they are greatly separated in point of time.

One final consideration has been taken into account by the Court in arriving at the conclusion expressed herein.

Section 1317.08 provides that if prohibited charges are received by the retail seller, the retail buyer "may recover the total amount paid to the retail seller." The legal effect of this provision is equivalent to the remedy provided to the borrower under the Small Loans Act, O.R.C. § 1321.13(E), wherein it is provided that in instances of loans in violation of the Act the lender has no right "to collect or receive *or retain any principal,* interest or charges." Neither of these code sections has any proviso that recovery of the total amount paid to the seller or lender is conditioned upon restoration of any lost security interest.

Now assuming a situation wherein a retail buyer had paid in full a conditional sales contract so as to receive full legal title to the chattel purchased thereunder and he thereafter discovered that such payment included charges prohibited under the Retail Installment Sales Act, section 1317.08 plainly states that he could recover every cent paid to the retail seller. If he were to avail himself of the right of recovery granted by the law on its face the end result would be that he would possess the chattel free from any lien claim of the retail seller and the retail seller would have collected nothing in payment therefor under the contract. That is precisely the result arrived at in the decision under review, but in this case the retail buyer's remedy was exercised at the inception, rather than the termination, of the contract.

It is this Court's conclusion that when the Ohio legislature declared that no retail installment contract, or security interest created by such contract, which evidenced an indebtedness greater than that permitted under the Retail Installment Sales Act shall be enforceable against the retail buyer it was the legislative intent to deprive the retail seller of all rights arising under such contract. Undoubtedly the total forfeiture of the retail seller's rights is a

severe penalty, particularly under the facts of this case. This Court, however, is bound to apply the Ohio law as it is written, no matter whether the Court regards it as fair or equitable. Relief from any injustice worked by the application of this far-reaching statute to an unusual narrow fact situation, such as the one presented herein, must rest with the legislature.

As to the question of the notice required by section 1317.08 the Court adopts the Referee's findings on this issue.

The petition for review is denied.