In the Matter of Robert Earl LONG, Audrey Fay Long, Debtors.

Wylan W. WITTE, Trustee, Plaintiff,

v.

GENERAL MOTORS ACCEPTANCE CORPORATION, Guess Motors, Inc., Defendants.

Bankruptcy No. 680–00185.
Adv. No. 680–0069.

United States Bankruptcy Court, N. D. Ohio.

Jan. 21, 1982.

Donald M. Miller, Canton, Ohio, for plaintiff.

Richard A. Princic, of Day, Ketterer, Raley, Wright & Rybolt, Canton, Ohio, for defendant G. M. A. C.

Terrence P. Kessler, of Black, McCuskey, Souers & Arbaugh, Canton, Ohio, for defendant Guess Motors, Inc.

## FINDINGS OF FACT OPINION AND CONCLUSIONS OF LAW

JAMES H. WILLIAMS, Bankruptcy Judge.

The trustee in bankruptcy initiated this action under Ohio's Retail Installment Sales Act, Section 1317.01 *et seq.* of the Ohio Revised Code, seeking relief under Revised Code Section 1317.08 for an alleged "negative equity" violation as that term has been defined in the case of *In re Sloan,* 285

F.Supp. 1 (N.D.Ohio, 1968). Defendants have answered by asserting failure of consideration as to the underlying contract as an affirmative defense to the negative equity allegations of the complaint. A hearing was held on the complaint, and at the close of evidence it was stipulated that a negative equity violation had occurred; the sole issue presented for decision is whether failure of consideration operates as an affirmative defense to an action for willful overcharge under Revised Code Section 1317.08.

Upon due consideration of the pleadings, evidence and arguments presented, the court enters its Findings of Fact and Conclusions of Law as hereinafter set forth.

## FINDINGS OF FACT

1. On December 3, 1979, debtor Robert Earl Long entered into a contract with defendant Guess Motors, Inc. (hereinafter referred to as Guess) for the purchase of a 1979 Pontiac Lemans, providing for a cash down payment of $865.46 and forty-eight monthly installments of $203.04 commencing on January 15, 1980.

2. The parties have stipulated that the list price of the 1979 Pontiac Lemans was intentionally increased to conceal a negative equity in debtor's trade-in, a 1975 Ford Mustang, i.e., the fair market value of the Mustang was $855.00 less than the balance owed thereon by the debtor.

3. In lieu of a cash down payment, debtor tendered three personal checks, each dated December 3, 1979, in amounts of $300.00, $282.73 and $282.73 respectively.

4. Rather than depositing the checks immediately, debtor and Guess agreed that Guess would hold the checks and allow debtor to redeem them for cash on his biweekly paydays in satisfaction of his down payment obligation.

5. Debtor and Guess followed the redemption procedure as to the first two checks, but debtor never redeemed the final check for $282.73. When the agreed date for redemption of the third check had passed, Guess presented the check for payment and it was dishonored due to the prior closing of debtor's checking account.

6. Defendant Guess assigned the installment balance of the contract to defendant G.M.A.C., which took a security interest in the 1979 Pontiac Lemans purchased by debtor.

7. No installment payments were made by debtor pursuant to the contract of sale.

8. Debtor filed a Chapter 7 petition with this court on February 11, 1980.

## OPINION

This litigation involves the effect of a retail buyer's breach of contract upon his right of action against a retail seller for willful overcharge as contained in Section 1317.08 of the Ohio Revised Code. The decision of *In re Sloan*, 285 F.Supp. 1 (N.D. Ohio, 1968) held that the failure of a retail buyer to make any installment payments on his contract did not prejudice his right to sue upon a willful overcharge. The court is asked here to take an additional step and find that failure to complete the terms of down payment similarly does not affect this right of action based upon the financing of a negative equity.

Defendant Guess argues against the above result, stating that it was empowered to cancel the contract upon debtor's default and that cancellation of the underlying contract destroys the cause of action for willful overcharge.

Guess asserts that receipt of a negotiable instrument suspended its right to sue upon the down payment obligation, but that its right to sue was revived under Revised Code Section 1303.75(A)(2) upon dishonor of the instrument. Since this failure relates to a "payment due on or before delivery," Guess contends that it was authorized to cancel the contract per Revised Code Section 1302.77(F). As Guess views the statutory remedies contained in Revised Code Section 1317.08 to be rights arising under the contract, it submits that cancellation deprives a retail buyer such as debtor of his action under Section 1317.08, citing 18 O Jur.3d *Contracts* § 296 (1980).

Plaintiff does not quarrel with this theory insofar as revival of the obligation is concerned, but he proposes that Section 1317.08 of the Revised Code renders the contract unenforceable, thereby denying defendant Guess of the right to cancel the contract.

Section 1317.08 contains the following language:

No retail installment contract which evidences an indebtedness greater than that allowed by section 1317.06 or 1317.07 of the Revised Code and no retail installment contract in connection with which any charge prohibited by sections 1317.01 to 1317.11, inclusive, of the Revised Code, has been contracted for or received shall be enforceable against any retail buyer . . . and no security interest created by any such retail installment contract . . . shall be enforceable against any retail buyer . . . in default under the terms of the retail installment contract.

The pivotal case interpreting this language is *In re Sloan*, 285 F.Supp. 1 (N.D.Ohio, 1968), which concluded that the intent of the statute was "to deprive the retail seller of all rights arising under such contract." 285 F.Supp. at 8.

Each party to this action has asserted that the rights granted by Ohio's Retail Installment Sales Act conflict with rights available under Article 2 of the Uniform Commercial Code as adopted by Ohio, and the court is asked to determine which law controls, a problem vaguely reminiscent of the choice between the chicken and the egg. Certain salient features of the respective statutes have persuaded the court that the result advanced by plaintiff is correct, but a closer examination of the applicable law would seem to eliminate any need to favor one state statute over another.

### I. *Article 2, Ohio Uniform Commercial Code*

Defendant Guess' theory of the case turns upon the interchangeable use of the terms "rescission" and "cancellation," as it relies upon Ohio authority stating that a rescinded contract is void ab initio and therefore cannot be sued upon.

Judicial use and misuse of the above terms have clouded any distinction in meaning, but many sources have persisted in observing such a distinction. One commentator has observed:

Some efforts have been made to distinguish 'rescission' from the 'termination' or 'cancellation' of a contract, the latter two terms being applicable only to the rendition of further performance as provided in the contract, leaving intact all claims for performance rendered or breaches committed in the past.

5A Corbin on Contracts § 1236 (West, 1964).

 The Uniform Commercial Code is one source which has maintained the distinction described by Corbin by providing definitions of "termination" and "cancellation" which are something less than a rescission. In Ohio, Revised Code Section 1302.01(A) provides in relevant part:

(A) As used in sections 1302.01 to 1302.98, inclusive, of the Revised Code, unless the context otherwise requires: * * *

(13) 'Termination' occurs when either party pursuant to a power created by agreement or law puts an end to the contract otherwise than for its breach. On 'termination' all obligations which are still executory on both sides are discharged but any right based on prior breach or performance survives.

(14) 'Cancellation' occurs when either party puts an end to the contract for breach by the other and its effect is the same as that of 'termination' except that the cancelling party also retains any remedy for breach of the whole contract or any unperformed balance.

From the foregoing, it is apparent that rights prior in time to the termination or cancellation of a contract survive the act which puts an end to the contract. Thus, even if the court concluded that the willful overcharge action was a contractual remedy and not an independent statutory remedy, defendant Guess' right to cancel per Revised Code Section 1302.77(F) would not defeat plaintiff's right of action.

## II. *Ohio Revised Code Section 1317.08*

Plaintiff has observed that a violation of Section 1317.08 is made out if a prohibited charge has been "contracted for." Quite apart from any question of the ultimate fate of the instant sales contract, it is clear that, for a period, the stipulated overcharge was "contracted for." In arguing for the availability of cancellation as a remedy, defendant Guess itself admits that a contract was in existence from December 3, 1979 to the date of failure of "a payment due on or before delivery" under Section 1302.77. As previously discussed, cancellation under Ohio's version of the U.C.C. does not completely void a contract, and the language of Section 1317.08 suggests that formation of an offending contract is sufficient to violate the Retail Installment Sales Act. Under this analysis, a true rescission would similarly not appear to be a defense to an action for willful overcharge, but the instant facts do not present this question for decision.

For the above reasons, the court concludes that defendant Guess has not proved an affirmative defense to the willful overcharge action brought by plaintiff. It appears from the record that the vehicle in question has been sold by agreement of the parties and prior order of this court; therefore an award to plaintiff of the proceeds of sale would substitute for the traditional statutory remedy of declaring the security agreement to be unenforceable.

As to the other relief requested in the complaint, the evidence shows that debtor paid a total of $582.73 toward the down payment on the vehicle. There is, however, in the court's opinion, a failure of proof by the plaintiff that such sum is recoverable under Section 1317.08. Recovery turns upon the application of the following paragraph from the Section:

> If charges greater in amount than those provided for in sections 1317.01 to 1317.11, inclusive, of the Revised Code, are received by the retail seller, his agent, assignee, or successor in interest, the retail buyer, his assignee, or successor in interest may recover the total amount paid to the retail seller, his agent, assignee, or successor in interest, from the retail seller or the holder of the retail installment contract.

Having established that we are dealing with a "retail installment contract which evidences an indebtedness greater than that allowed by Section 1317.06 or 1317.07 of the Revised Code," it remains plaintiff's burden, if he is to recover any sums actually paid, to demonstrate that such sums included prohibited charges and were actually "received" by the seller or his agent, assignee or successor in interest. This, in the court's view of the evidence before it, has not been accomplished.

Plaintiff has further requested costs and attorney fees, but the court feels that such an award is not warranted by the circumstances here present.

## CONCLUSIONS OF LAW

1. A negotiable instrument which is given in satisfaction of a down payment obligation on an installment contract and which is dishonored revives a seller's right to cancel said contract pursuant to Ohio Revised Code Section 1302.77(F).

2. Cancellation of a retail installment contract does not affect a retail buyer's right to pursue the retail seller in an action for willful overcharge under Ohio Revised Code Section 1317.08 and to obtain the full range of relief provided by that section.

3. The trustee in bankruptcy, as a successor in interest to the debtor, acquires the above described rights formerly available to the debtor as a retail buyer.